**Walter James NIELSEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4857.**

Supreme Court of Alaska.

Feb. 6, 1981.

James D. DeWitt, Paul A. Barrett, Call, Haycraft & Fenton, Fairbanks, for appellant.

Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

Walter James Nielsen was convicted of second degree murder and two counts of shooting with intent to kill. In this appeal he challenges the superior court's denial of two pre-trial motions: a motion to continue his trial and a motion for a separate trial on his defense of insanity. Nielsen further contends that he was denied the effective assistance of counsel and that the court gave a number of erroneous instructions to the jury. His final contention is that his sentence is excessive.

On the afternoon of December 25, 1978, Nielsen went to a Fairbanks bar with his sister and brother-in-law, Rose and Wallace Leonard. In the early morning hours of December 26, they joined three other individuals at the bar: Joseph Arey, Linda Pearson, and Richard Charlie. When the bar closed at around 5:00 a. m., the entire group took a taxi to the Leonard home where they continued drinking. Between 6:00 and 6:30 a. m., Nielsen went to bed. The others continued drinking.

Shortly after 11:00 a. m. a dispute arose between Wallace Leonard and Joseph Arey. Eventually, Leonard ordered Arey to leave and escorted him out of the house. When

Leonard returned to the house Pearson attacked him, trying to scratch his face, and she too was ejected from the premises. Charlie left voluntarily a few moments later.

Leonard accompanied Charlie out to the street, where Pearson and Arey were waiting. There, he heard someone shout, "He's got a gun." As Leonard turned to walk back into the house, Arey shot him in the back with a .357 revolver. After he was shot, Leonard crawled to the house and made his way into the kitchen, where he lost consciousness.

As these events were taking place, Rose Leonard went to get her brother, Walter Nielsen. Nielsen looked out the window in time to see Arey shoot Wallace Leonard. He then went to his brother-in-law's gun rack where he armed himself with a .22 magnum rifle.

Meanwhile, Arey, Pearson and Charlie got into the cab that had been called for them. The taxi driver testified that as he was getting ready to depart, the driver saw Nielsen coming toward the car with a rifle. Nielsen stood in front of the car and fired a bullet through the right passenger corner of the windshield. Nielsen ordered the cab driver out of the car telling him that the "sons of bitches shot [his] brother-in-law in the back." The cab driver left and ran into the house to call for help. Nielsen then shot out the left front tire and fired another bullet through the driver's side of the front windshield. A total of four shots were fired through the windshield. Linda Pearson and Richard Charlie, who were sitting in the front seat, were both wounded.

Nielsen then began shooting through the side window, at Joe Arey. According to the cab driver, Nielsen moved around the cab, repeating the words, "I'll teach you to shoot my brother-in-law in the back, you sons of bitches." He continued to shoot and yell at the people in the cab until the rifle was empty, and even then pulled the trigger a few more times. Arey was struck by several bullets and killed.

After the shooting, Nielsen went back into the house and told his sister what he had done. She told him to get out of the house before the police arrived and helped him escape through the back window. Nielsen was arrested shortly thereafter and gave a full confession to the police.

The autopsy of Joe Arey's body revealed that, in addition to the bullet wounds inflicted by the rifle, Arey had a .357 magnum bullet wound in the head. The bullet appeared to have come from the gun that Arey had apparently stolen from Wallace Leonard, then used to shoot him. The gun was found in Arey's hand, when his body was removed from the car.

At trial, a forensic pathologist testified that the head wound was a postmortem wound and that Joseph Arey had been killed by a bullet from the .22 rifle that struck his heart. It was his conclusion that the head wound was not self-inflicted as it had to have been fired from a distance of at least eighteen inches. Based upon this evidence, the state theorized that after the cab driver went to call for help, and after Nielsen had fired all of the bullets that were in the rifle, he opened the rear door of the cab, took the .357 magnum out of Arey's hand, shot him in the head, and then replaced the gun in the dead man's hand.

On January 2, 1979, a grand jury returned a three count indictment charging Nielsen with the second degree murder of Joe Arey and shooting Linda Pearson and Richard Charlie with the intent to kill each of them. Nielsen's trial began on March 28, 1979. Originally, he claimed both self-defense and the defense of insanity. At trial, however, he relied solely upon his claim of self-defense. He was represented during trial by Fairbanks attorney Irwin Ravin.

Nielsen was convicted on all three counts of the indictment. He was sentenced to forty-five years on the murder charge and received two ten-year sentences for the shootings of Pearson and Charlie. Although the ten-year terms were to be served concurrently, they were ordered to be served consecutively to the forty-five

year term, resulting in a total sentence of fifty-five years.[1]

## I

Nielsen's first contention is that the trial court erred in refusing to grant his request for a continuance.

On March 15, 1979, Nielsen moved for a continuance of his trial, which was scheduled to begin the week of March 26. The motion was denied. The basis for the motion was that there was not sufficient time prior to trial for an independent psychiatric and psychological examination that had been authorized on March 12, 1979, at the omnibus hearing.[2]

Nielsen's attorney had attempted to arrange an appointment with Dr. Aron Wolf of the Langdon Clinic in Anchorage. Dr. Wolf agreed to do the necessary psychological and psychiatric examinations. However, an appointment could not be scheduled until March 22. Further, Dr. Wolf felt that he would need at least three and possibly more sessions with the defendant. To further complicate matters, Nielsen had been transported from Fairbanks to Ketchikan for a probation revocation hearing in an unrelated matter.[3] On March 27, 1979, Nielsen was finally examined by Dr. Wolf and Dr. Robinson of the Langdon Clinic. On March 28, his trial began.

It is important to note that the motion for continuance was made to enable Nielsen to undergo additional psychiatric and psychological testing; Nielsen had already been examined, at the request of the state, by Drs. Irving Rothrock and Jane L. Krauss of the Fairbanks Psychiatric Clinic. Their reports were filed with the court on February 7, 1979, and February 16, 1979, respectively.

The decision whether to grant or deny a motion for continuance is committed to the sound discretion of the trial court; reversal is appropriate only upon the showing of an abuse of that discretion. *Wright v. State*, 501 P.2d 1360, 1366 (Alaska 1972); *Klockenbrink v. State*, 472 P.2d 958, 964 (Alaska 1970). *See Salazar v. State*, 559 P.2d 66, 71 (Alaska 1976); *Doe v. State*, 487 P.2d 47, 57 (Alaska 1971). But, error alone is not enough to require reversal. *Wright v. State*, 501 P.2d at 1366 (Alaska 1972). It must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. *Klockenbrink v. State*, 472 P.2d 958, 964 (Alaska 1970), *quoting People v. Solomon*, 24 Ill.2d 586, 182 N.E.2d 736, 738 (1962).

In the instant case, Nielsen asserts two prejudicial effects of the denial. First, he claims that the denial resulted in incomplete psychological and psychiatric testing. Second, because the tests were performed the day before trial, he claims that counsel was not given adequate time in which to utilize the examination reports in preparing his defense. Careful review of the record fails to convince us that either of these arguments has merit.

Because no prejudice has been shown, we should conclude that the trial court did not commit an abuse of discretion in denying the motion for continuance.

## II

On February 20, 1979, Nielsen moved for a bifurcated trial. He argued that he would be unduly prejudiced if re-

---

1. All of these sentences were made to run consecutively to a twenty year sentence imposed on another charge by the superior court in Ketchikan.

2. According to the affidavit of his trial attorney, Mr. Ravin, the omnibus hearing was originally scheduled for March 1, 1979, then postponed until March 9, and finally held on March 12, 1979.

3. In 1974, Nielsen was placed on probation after he was convicted of assault with a dangerous weapon and stabbing or cutting with intent to wound or maim. The conditions of his probation included a prohibition on possession of alcoholic beverages and entry into any establishment where liquor was sold and consumed. These conditions were violated, and in March, 1979, he was transported from Fairbanks to Ketchikan for a probation revocation hearing. No notice was given to his Fairbanks attorney, Mr. Ravin.

quired to present his claim of self-defense at the same time as his defense of insanity. His motion was denied and Nielsen abandoned his claim of insanity when the case went to trial.

Our most recent discussion of the bifurcated trial issue was in *Houston v. State*, 602 P.2d 784, 787 (Alaska 1979). There, we reiterated our holding in *Post v. State*, 580 P.2d 304 (Alaska 1978), that "the question whether there should be a bifurcated trial was committed to the trial court's discretion and would be reviewable on appeal only for abuse." *Id.* at 306; *Kinsman v. State*, 512 P.2d 901, 904 (Alaska 1973). "[A] sound exercise of the trial court's discretion will ordinarily result in bifurcation whenever a defendant shows that he has a *substantial insanity defense* and a *substantial defense on the merits* to any element of the charge." *Houston v. State*, 602 P.2d at 787, *quoting Contee v. United States*, 410 F.2d 249, 250 (D.C.Cir.1969) (emphasis added).

Defense counsel repeatedly argued that the prejudice was "obvious," but went no further. This simply does not meet the standard we have set forth. Moreover, our own review of the record fails to convince us that Nielsen had a substantial defense on either of the two theories.

### III

Nielsen's third argument for reversal is that he was denied the effective assistance of counsel at trial. He points to several errors allegedly committed by his trial attorney, among them being:

1) failure to fully and completely establish the requirements for his motion for continuance and motion for a bifurcated trial;

4. That standard, which was stated earlier in the *Risher* opinion, is as follows:

   All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions. 523 P.2d at 424.

5. Instruction 19A stated:

   Homicide is justifiable and not unlawful when committed by a person in the lawful defense of himself or a family member when

2) failure to assert a diminished capacity defense; and

3) failure to object to the jury instruction regarding the defendant's interest in the case.

The standard we have set forth to determine the adequacy of representation at trial is as follows:

Before reversal will result, there must first be a finding that counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence which we have enunciated. Secondly, there must be a showing that the lack of competency contributed to the conviction. If the first burden has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.

*Risher v. State*, 523 P.2d 421, 425 (Alaska 1974) (footnote omitted).[4]

Careful review of the record fails to convince us counsel's performance failed to conform to the required standard of competence, or that his alleged errors contributed to Nielsen's conviction. Thus, we conclude that the defendant was not denied the effective assistance of counsel at trial.

### IV

Nielsen's fourth and fifth claims of error involve the instructions which were given to the jury regarding his claim of self-defense.

Nielsen first contends that it was error to give instruction 19A regarding justifiable homicide.[5] He argues that since

he has reasonable grounds to apprehend that he or a family member is in danger of death or great bodily injury and that there is imminent danger of such a design being accomplished.

In order to justify the taking of a human life in self-defense, a defendant, as a reasonable person, must have reason to believe and must believe that he or a family member is in danger of death or of great bodily injury; and further, the circumstances must be such that an ordinarily reasonable person, under simi-

that particular instruction dealt only with homicide and not the crime of shooting with intent to kill, the jury was not properly instructed on self-defense as it pertained to the latter charges.

As the state notes in its brief, Nielsen's trial attorney never objected to the instruction. When the instruction was discussed, he specifically approved of it and did not ask that it be omitted, nor did he ask for an instruction concerning the charges of shooting with intent to kill. Rather, he asked for several modifications which the court allowed and after the change was made said, "That's as far as self-defense goes."

"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections." Rule 30, Alaska R.Crim.P. Since the record fails to show that Mr. Ravin ever objected to this particular instruction, we do not consider this issue on appeal.[6]

■ Appellant's second argument is that the court erred in refusing his request for an instruction on justifiable homicide, using the language of former AS 11.15.100.[7] None of the factors in that proposed instruction, however, pertained to the facts of this case. Furthermore, the language of jury instruction 19A covers basically the same points as would a reading of AS 11.-15.100, thereby rendering the proffered instruction redundant.

Thus, we conclude that the court did not err in instructing the jury on the matter of self-defense.

## V

■ The next issue that we are asked to examine is whether the trial court erred in instructing the jury that it could consider the interest of a party in the outcome of the trial, in determining his credibility as a witness. The challenged instruction stated, in pertinent part:

The jury may scrutinize the manner of witnesses while on the stand, and in determining the weight to be given to witnesses' testimony, the jury may consider the witnesses' relation to the case, if any, and also the witnesses' degree of intelligence. *In judging the testimony of a party, you may consider his interest in the outcome of this matter and his hopes and his fears.*

(Emphasis added.)

Again, Nielsen's attorney failed to object to the giving of the above instruction. Thus, he is no longer entitled to claim that the court erred. Rule 30, Alaska R.Crim.P. Accordingly, we do not consider the issue.[8]

## VI

■ Nielsen's final contention is that his sentence is excessive. A sentence will be modified only in those instances where we are convinced that the trial court was clearly mistaken. *McClain v. State*, 519 P.2d 811 (Alaska 1974). Given Nielsen's

---

lar circumstances, would believe that it was necessary for him to use, in his defense and to avoid death or great bodily injury to himself, such force or means as might cause the death of his adversary.

**6.** We also refuse to review the instruction under the doctrine of plain error. Rule 47(b), Alaska R.Crim.P. The alleged error does not appear to have affected a substantial right; even though the challenged instruction dealt only with the murder charge, there were two other instructions given to the jury which adequately covered the shooting with intent to kill charges.

**7.** Former AS 11.15.100 provided:

*Justifiable homicide.* The killing of a human being is justifiable when committed by any person.

(1) to prevent the commission of a felony upon him, or upon his husband, wife, parent, child, master, mistress, or servant;

(2) to prevent the commission of a felony upon his property, or upon property in his possession, or upon or in a dwelling house where he may be;

(3) in the attempt, by lawful means, to arrest a person who has committed a felony, or in the lawful attempt to suppress a riot or preserve the peace.

**8.** We reject Nielsen's further argument that the court's giving of this instruction constituted plain error. Rule 47(b), Alaska R.Crim.P.

lengthy criminal record and his propensity toward violent crimes, it does not appear that the court was clearly mistaken in this case.[9]

We do note, however, that the court's judgment contains no provision for psychiatric or alcohol treatment, although the court was aware of the fact that Nielsen was in need of such therapy and so stated at sentencing. Upon receipt of our mandate, the superior court is instructed to amend its judgment to recommend both psychiatric treatment and alcohol rehabilitative treatment. Otherwise, the judgment is AFFIRMED.

COMPTON, J., not participating.

---

9. Nielsen's prior convictions included other assaults with a dangerous weapon. One of these, committed in Ketchikan, resulted in a twenty-year sentence. *See* notes 1 and 3, *supra.*