**Scott Ross NEWCOMB, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5132.**

Court of Appeals of Alaska.

Oct. 1, 1982.

Peter F. Mysing, Asst. Public Defender, Kenai, and with Drathman & Weidner, Anchorage, and Brian Shortell, Public Defender, Anchorage, for appellant.

W. H. Hawley and David Mannheimer, Asst. Attys. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

COATS, Judge.

Scott Ross Newcomb was convicted by a jury of grand larceny, in violation of former AS 11.20.140, for stealing building materials from United Building Supply in Kenai. Imposition of sentence was deferred for three years on the condition that Newcomb serve thirty days in jail.

Newcomb appeals and argues that the trial court abused its discretion by denying (1) Newcomb's counsel's motion to withdraw and (2) a corollary motion for a continuance so that Newcomb could obtain new counsel. We have concluded that the trial court should have granted the continuance so that Newcomb could obtain different

counsel. We therefore reverse his conviction and remand for a new trial. In order to understand the context in which Newcomb's motions were made and our reasons for reversing, a brief review of the facts is necessary.

Newcomb retained Paul Davis as counsel on July 25, 1979, shortly after being charged with the crime in question. On August 8, 1979, the grand jury indicted Newcomb. Trial was ultimately set for Monday, October 15, 1979. Newcomb met with his attorney, Paul Davis, on the Thursday preceding trial. He imparted information to Davis which caused Davis concern over whether he could ethically represent Newcomb if Newcomb decided to testify in his own behalf. Davis considered the ethical problem and did legal research for a day in order to determine what he should do. He also consulted with his partner, Edgar Paul Boyko, an experienced trial lawyer specializing *inter alia* in criminal defense. At 4:30 p. m. on Friday afternoon, Davis

called Judge Hanson, the presiding judge, to inform him that Davis would seek to withdraw as Newcomb's attorney because of ethical problems.[1]

Davis formally moved to withdraw from the case at 9:00 a. m. Monday morning, just before trial. The time of the trial had been moved from 10:00 a. m. to 9:00 a. m. by the court, but Davis stated that he only got word of this late Friday afternoon and had not been able to contact his client, who had no phone. Therefore Newcomb was not present at the hearing on Davis' motion to withdraw. The court and Davis went on record anyway and discussed the reasons for Davis' motion to withdraw. Davis did not directly inform the court what the problem was with his representation of Newcomb, but he did tell the court that for him to proceed would be a violation of disciplinary rule 7–102.[2] Davis indicated that he could not proceed because he had received a confidential communication from his client which he believed made it impossible for

1. The trial court found that Davis acted with reasonable dispatch in informing the court of the problem. Although "it would have been nicer" to have learned of the problem on Thursday, the court recognized Davis' need to do some research. The court acknowledged that it had the option on Friday afternoon to call the jury and witnesses and postpone the trial, but it elected not to do so.

2. Alaska Code of Professional Responsibility, Disciplinary Rule 7–102 reads as follows:

*Representing a client within the bounds of law.*

(A) In his representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client, when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

(4) *Knowingly use perjured testimony or false evidence.*

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

(B) A lawyer who receives information clearly establishing that:

(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribunal, shall promptly call upon his client to rectify the same, and *if his client refuses or is unable to do so, he shall reveal the fraud to the affected tribunal* and may reveal the fraud to the affected person.

(2) A person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal. [Emphasis added].

Ethical Consideration 7–26 reads:

The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline. A lawyer should, however, present any admissible evidence his client desires to have presented unless he knows, or from facts within his knowledge should know, that such testimony or evidence is false, fraudulent, or perjured.

him to proceed. Judge Hansen "assumed for purposes of the discussion" a hypothetical situation where an attorney had a client who wished to put on witnesses who wished to commit perjury. Judge Hansen said that he felt if he were the attorney his responsibility would be to avoid putting on perjured testimony but to give the client the best defense possible by trying to show that the state had not met its burden of proving the charges. Davis agreed with the court's hypothetical but stated that his "problem could be exacerbated by the fact that the client would refuse to not take the stand." When Newcomb arrived for his trial a short while later, the court replayed the tape of the discussion between the court and Davis. The court and Davis then considered the standards proposed by the ABA for dealing with the problem and several appropriate cases.

In order to understand the discussion that then took place between the court, counsel, and defendant, it is necessary to note that the case against Newcomb consisted of two witnesses: the police officer who discovered Newcomb parked behind United Building Supply and in the act of loading building supplies into Newcomb's truck at 2:30 a. m., and the manager of United Building Supply who ultimately testified that the materials in question belonged to his company. Defense counsel had previously received copies of the police officer's reports and had moved to suppress on constitutional grounds certain statements Newcomb allegedly made to the police officer. These motions were denied. Newcomb does not challenge those rulings in his appeal. The police report stated in relevant part:

This officer was on routine patrol and in prowl checking United Building Supply, I drove to the rear of the building, at that point I observed a 51 Chev. pickup, License No. 8805 AR, sitting directly behind the building. I also observed the above listed Mr. Newcomb loading some metal roofing into the back of the pickup. At this point I advised radio of a possible larceny in progress and exited the vehicle. As I was exiting the vehicle, Mr. Newcomb ran around to the front of his vehicle out of sight of the officer and crouched down. I walked around Mr. Newcomb's vehicle and observed him crouched down, when he saw me he stood up and I ask [sic] Mr. Newcomb what he was doing. Mr. Newcomb replied, "just loading some roofing—some roofing material." I asked Mr. Newcomb if he had paid for or had a receipt to show he had paid for the materials and Mr. Newcomb stated that he had not paid for the materials. At this point I took Mr. Newcomb back to my patrol vehicle and after a pat search, placed him in the back seat. Mr. Newcomb several times requested [me] to let him go and just help him unload the materials and forget the whole thing. Mr. Newcomb was advised of his constitutional rights and . . . asked to sign the rights card acknowledging the advisement of his rights. He refused to sign it. I asked Mr. Newcomb what he was going to do with the building supplies and he said he was building a garage. At this point Mr. Newcomb stated he would not answer any more questions.

The police report continues,

When Mr. Newcomb was contacted by this officer he did have a cut on his right hand, below the thumb, in the area of the palm, apparently as a result of his loading the metal roofing into his pickup. There was some blood on several of the sheets of the roofing.

Davis stated that because of information which he received from Newcomb, he felt he was unable to question the truth of the testimony which he anticipated the officer would give. Specifically, Davis told the court that during the trial of the case there would be four problem areas in which he could not fully participate, due to ethical considerations and his own feelings.

First of all, I do not believe I could *voir dire* the jury as to one important issue. The second is that I do not believe I can cross-examine a key prosecution issue [sic] with some aim to testing his credibility. Third, I cannot conduct examination of my client in either direct or redirect. Fourth, I cannot argue either my client's

testimony or against the credibility of the key prosecution witness.

Davis felt that he would not even be able to ask routine questions on *voir dire* as to whether a prospective jury would give more credence to a police officer than to the ordinary witness. Davis acknowledged that this was more of a subjective feeling on his part than reliance on an express ethical requirement.

The state supported Davis' motion to withdraw. The prosecuting attorney was reluctant to proceed in the face of a strong possibility of reversible error, feeling the jury might make adverse inferences from Davis' less than vigorous performance as Newcomb's lawyer. She agreed with Davis that the same problem might not arise if Newcomb secured another lawyer and noted that the problem between Davis and Newcomb appeared to be more than a problem which was caused by the ethical considerations previously discussed.

Newcomb himself requested a new lawyer. Davis and Newcomb agreed that the attorney-client relationship had deteriorated to the point that Davis could no longer adequately represent Newcomb. Newcomb preferred that Davis not examine anyone about anything at all. Newcomb, counsel and the court subsequently met in chambers at which time Newcomb, having considered the morning's discussion, personally moved to discharge Davis and asked the trial judge to recuse himself on the ground that the discussion had necessarily prejudiced the judge against Newcomb's defense. When this motion was denied, Davis asked for a stay in order to petition for supreme court review of the issue; the prosecutor joined in the motion but it was also denied. Newcomb reiterated his wish that the trial judge disqualify himself, due to all he had heard regarding Davis' beliefs that Newcomb contemplated committing perjury. The judge refused to do so, stating that if Newcomb testified and the state felt that he perjured himself, it should separately prosecute him for perjury, but that any such perjury would not be a major factor in sentencing in the case.

The trial then proceeded with jury *voir dire.* The prosecutor asked a number of questions and inquired of each juror whether he or she would give the same weight to the testimony of a police officer as to other testimony. The court, in some cases at Davis' prompting, also asked a few questions. However, Newcomb specifically instructed Davis not to ask any questions on *voir dire,* and Davis remained silent, after requesting the court to ask any questions necessary to protect Newcomb. Among the prospective jurors were: (1) a former manager of Newcomb's apartment building; (2) a friend of Newcomb's who was familiar with the case and was uncomfortable judging Newcomb (excused for cause; Davis presented no argument against the excuse for cause); (3) a bank loan officer who had made loans to both the police officer and United Building Supply (eliminated by peremptory challenge); (4) a person who implied that she would give more weight to the testimony of a police officer, although it would depend on who the other person was (neither Davis nor the court explored the issue). Davis, in consultation with Newcomb, exercised two peremptory challenges and, after consultation with Newcomb, waived the rest.

The prosecutor then presented the police officer. Newcomb directed Davis not to cross-examine the officer and chose to do it himself. Davis asked the court for a recess, which was granted, and outside the presence of the jury the following exchange took place:

THE COURT: ... Mr. Newcomb now has indicated that he wishes to cross-examine the state's witness. He does not wish you to do so, is that correct?

MR. DAVIS: That's my understanding, Your Honor.

THE COURT: Is that correct, Mr. Newcomb?

MR. NEWCOMB: I have no choice, Your Honor.

THE COURT: You have no choice?

MR. NEWCOMB: No lawyer.

THE COURT: Mr. Davis still represents you so far as I am concerned. If you do

conduct cross-examination, Mr. Newcomb, you'll be bound by all the rules of procedure and evidence that Mr. Davis or any lawyer would be bound by, do you understand that?

MR. NEWCOMB: I do.

THE COURT: And . . .

MR. NEWCOMB: As I said before, I have no choice. He is not representing me. He is giving me advice but he is not representing me. I'm put in a situation where I have no choice. . . .

THE COURT: All right. I think that you're ill-advised to do that, I think you should let Mr. Davis conduct the case for you. I know him to be competent counsel.

MR. NEWCOMB: He doesn't want to represent me. I'm not going to hold him to do something he doesn't want to do.

Davis reiterated his willingness to proceed within ethical confines but stated that there would be some further difficulty with cross-examination of the officer:

> [L]et me see how would I put this—that if I ignore the situation and cross examine this witness as I would in the absence of presenting any defense at all, that it may have a negative effect later on on his defense, and they may be inconsistent. Therefore, I feel that I have a double-edged problem.

Therefore, the court allowed Newcomb to "proceed at his peril," and Newcomb conducted an unremarkable cross-examination. There were several instances of "whispered conversation" in the record, and it is clear that Davis was consulting with Newcomb during Newcomb's examination of the officer.

The prosecution next presented the lumber yard manager for United Building Supply, who identified the items taken and testified as to their value.[3] Then Newcomb cross-examined the manager, although no additional reasons had been given by Davis why he could not do so. During cross-examination Newcomb established that the manager had no way of specifically identifying the materials found in Newcomb's truck as belonging to United Building Supply other than that they looked similar to materials delivered to United Building Supply shortly before, that the manager's testimony as to the cost and value of the materials was different from the testimony he gave at the preliminary hearing, and that the materials had not been counted or otherwise identified before the end of the previous workday.

At this point, out of the presence of the jury, Newcomb again personally moved to discharge Davis and for a continuance to get another lawyer before presentation of his defense. He stated that things were happening too fast in the court room, and he was having trouble understanding them. Newcomb conceded that Davis was giving him advice, but he contended that he and Davis were having trouble communicating all along. Davis added:

> Mr. Newcomb informed me that he does not want to take the stand in the absence of having an attorney, someone who can explain to him what the ramifications are and someone he trusts and believes in. We don't have that kind of relationship anymore. I believe that what he is trying to do is—and please correct me if I'm wrong, I don't want to be putting words in his mouth in this thing at all—but my understanding is, based upon our conversations just now is that he does not want to take the stand unless he has an attorney to help him and direct him. I have told him that I will not help him and I will not direct him in this—in his case as it currently stands. And I think, unless I'm incorrect, and I think Mr. Newcomb should be asked about it directly, this is the situation that he is facing, this is his problem.

Newcomb acknowledged that Davis had accurately stated his position. The court denied the motion for a continuance. It did allow Newcomb an additional five minutes

---

3. At one point Davis interposed an objection on Newcomb's behalf, saying "Excuse me, I'm sorry. Mr. Newcomb wouldn't know how to do this but I would object to any testimony as to any exhibits that are not placed in evidence." This was the sum of Davis' objections.

to determine whether or not he would take the witness stand.

Newcomb decided not to take the stand. At Newcomb's request, Davis presented final argument. He emphasized that the burden of proof was on the state, that the manager had been confused as to the identification of the value of the materials, and basically argued that the evidence presented was insufficient. The jury returned a verdict of guilty.

Immediately after the trial, the judge on his own initiative asked Newcomb if he would prefer to have Davis withdraw as his attorney. Newcomb responded affirmatively, and the judge allowed the withdrawal. The public defender was appointed and represented Newcomb at sentencing and in this appeal.

Newcomb contends that the failure of the trial court to allow Davis to withdraw and to continue the trial so that Newcomb could secure new counsel was an abuse of discretion which prejudiced his right to the effective assistance of counsel. He argues that the ethical conflict experienced by Davis made it impossible for Davis to provide Newcomb with effective representation, and that the court should have allowed Davis to withdraw. Newcomb contends that this should be so even if he were fully intending to commit perjury.

The state responds that Newcomb received the assistance to which he was entitled, since his right to counsel is necessarily circumscribed by ethical considerations which would have affected any attorney he hired. The state also argues that any prejudice which occurred to Newcomb resulted from his own limitation of his lawyer's function beyond that which Davis imposed on himself.

In *Neilson v. State,* 623 P.2d 304, 307 (Alaska 1981), the supreme court reviewed the law on granting or denying continuances:

> The decision whether to grant or deny a motion for continuance is committed to the sound discretion of the trial court; reversal is appropriate only upon the showing of an abuse of that discretion.

*Wright v. State,* 501 P.2d 1360, 1366 (Alaska 1972); *Klockenbrink v. State,* 472 P.2d 958, 964 (Alaska 1970). *See Salazar v. State,* 559 P.2d 66, 71 (Alaska 1976); *Doe v. State,* 487 P.2d 47, 57 (Alaska 1971). But, error alone is not enough to require reversal. *Wright v. State,* 501 P.2d at 1366 (Alaska 1972). It must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. *Klockenbrink v. State,* 472 P.2d 958, 964 (Alaska 1970), *quoting People v. Solomon,* 24 Ill.2d 586, 182 N.E.2d 736, 738 (1962).

We believe that under the circumstances of this case the trial judge abused his discretion in not allowing Newcomb a continuance to obtain different counsel. First we note that it appears clear from the record that it would not have been difficult to continue this trial. The case was simple and involved two local witnesses and an estimated three hours of testimony. The case shows no history of delays, and there are no findings which indicate that it would have been difficult to reschedule this case. We note that the prosecutor did not argue that there would be any difficulty in continuing the case; in fact she joined the defense in asking for a continuance. We also believe that there was sufficient evidence to suggest that the attorney-client relationship between Newcomb and Davis had broken down, and we believe that the record reflects that this breakdown might not have occurred with another attorney. Davis, Newcomb and the prosecuting attorney all seemed to agree on this point.

Furthermore, Davis' method of attempting to withdraw from the case tended to undermine the attorney-client relationship. In trying to extricate himself from his ethical dilemma, Davis essentially told the trial judge that his client was going to perjure himself. To make matters worse, this revelation was made to the trial judge in Newcomb's absence. Although this court appreciates the ethical dilemma in which Davis found himself, from Newcomb's point of view Davis' statements in Newcomb's ab-

sence would be perceived as revealing to the court confidential statements which Newcomb had made to Davis and also as taking actions which might prejudice the trial judge against Newcomb's case. This is why one well reasoned opinion in this difficult area, as well as the ABA Standards Relating to the Prosecution and Defense Functions, states that an attorney faced with a client who wishes to testify falsely should move to withdraw from the case but should not reveal to the court that his client wishes to commit perjury.[4] Given the fact that Davis, Newcomb and the prosecutor all indicated that they believed that the problem between Newcomb and Davis was more than just an ethical problem, and given the fact that the record indicates that the method which Davis used to withdraw from the case was bound to have had a detrimental effect on the attorney-client relation-

ship, we conclude that the record reflects a greatly deteriorated attorney-client relationship between Newcomb and Davis.

The circumstances of this case distinguish it from *Coleman v. State,* 621 P.2d 869 (Alaska 1980), *cert. denied,* 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981). In *Coleman* the court held that the trial court did not abuse its discretion in failing to appoint another attorney for Coleman because the record supported the conclusion that Coleman's problem with his attorney resulted from his distrust of the Public Defender Agency and the judicial system in general. 621 P.2d at 881. Here, however, Davis and Newcomb claimed an individual conflict. There is no reason to believe that the same ethical conflict would necessarily arise with another attorney who might be better able to communicate with Newcomb. Even in the event a similar ethical problem

---

4. In *People v. Schultheis,* 638 P.2d 8, 13–14 (Colo.1981) the court said:

Even when counsel makes a motion to withdraw, however, the defendant is always entitled to an impartial trial judge, untainted by accusations that the defendant had insisted upon presenting fabricated testimony. Therefore, we hold that defense counsel, in a motion to withdraw, should never be required to cite the specific provisions of the Code of Professional Responsibility which prohibit the use of perjured testimony or false evidence. The court of appeals' rule [which said the attorney should reveal the code provision] is tantamount to a full disclosure to the court, since citing specific ethical provisions enables the court to determine that the factual basis for the motion to withdraw is the defendant's intention to present false alibi testimony. We do not approve of such a rule. Defense counsel should not, in any way, be required to divulge a privileged communication to the trial court during trial. See Code of Professional Responsibility, DR 4–101.

When confronted with a client who insists upon presenting perjured testimony as to an alibi, counsel may only state, in the motion to withdraw, that he has an irreconcilable conflict with his client. An "irreconcilable conflict" may mean a conflict of interest, a conflict of personality, a conflict as to trial strategy, or a conflict regarding the presentation of false evidence. The integrity of the trial proceedings is thereby preserved.

The ABA Standards Relating to the Prosecution and Defense Functions (Approved Draft 1971) provide:

Standard 7.7 Testimony by the defendant.

(a) If the defendant has admitted to his lawyer facts which establish guilt and the lawyer's independent investigation establishes that the admissions are true but the defendant insists on his right to trial, the lawyer must advise his client against taking the witness stand to testify falsely.

(b) If, before trial, the defendant insists that he will take the stand to testify falsely, *the lawyer must withdraw from the case, if that is feasible, seeking leave of the court if necessary.*

(c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises during the trial and the defendant insists upon testifying falsely in his own behalf, it is unprofessional conduct for the lawyer to lend his aid to the perjury or use the perjured testimony. Before the defendant takes the stand in this circumstance, the lawyer should make a record of the fact that the defendant is taking the stand against the advise of counsel in some appropriate manner *without revealing the fact to the court.* The lawyer must confine his examination to identifying the witness as the defendant and permitting him to make his statement to the trier or the triers of the facts; the lawyer may not engage in direct examination of the defendant as a witness in the conventional manner and may not later argue the defendant's known false version of facts to the jury as worthy of belief and he may not recite or rely upon the false testimony in his closing argument. [Emphasis added].

arose with another attorney, there is probably a substantial chance that, given his experience with Davis, Newcomb would be less likely to interpret his new attorney's actions in discouraging him from testifying as a lack of zeal.[5]

We recognize that the trial court needs broad discretion to deal with the problem of a defendant who, on the day of trial, wishes to have a continuance and a new attorney because of a similar ethical problem. However, in this case the record indicates that there was no reason why the case could not be continued or why the continuance of the case would hinder the administration of justice. The record also supports the fact that the attorney-client relationship had broken down and does not support the inference that another attorney-client relationship would similarly break down. These are the factors which lead us to the conclusion that the trial court abused its discretion in not allowing Newcomb a continuance so that he could later proceed to trial with another attorney.

Although the state's case was very strong, we cannot conclude that the failure to grant a continuance so that Newcomb could go to trial with an attorney with whom he did not have a conflict can be deemed harmless error under these circumstances. The trial record reflects that the conflict continued between Newcomb and his attorney during the trial and that Newcomb in many respects ended up representing himself during the trial. The record also reflects that Newcomb may have given up his right to testify because he had no faith in his attorney. We conclude that this record indicates that the conflict with counsel had an effect on Newcomb's representation. We cannot conclude beyond a reasonable doubt that this conflict did not affect the result of the trial.[6] *Risher v. State,* 523 P.2d 421 (Alaska 1974).

The conviction is therefore REVERSED.

5. Assuming Newcomb wanted to commit perjury, there is, of course, the possibility that he could lie to the second attorney so that the attorney would put Newcomb on the stand to commit perjury. The possibility of perjury is present in any case. There are severe penalties for perjury, and we believe that our institutions are strong enough to withstand the threat of perjury. Certainly jurors are aware that any witness with a strong interest in the outcome of a case will be tempted to lie. The testimony of other witnesses in the case and the skillful use of cross-examination normally make perjury a risky and self-defeating course of action.

6. We believe that *Coleman v. State,* 621 P.2d 869 (Alaska 1980), *cert. denied,* 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981), is distinguishable from the case at bar. In *Coleman* the defendant's attorney moved to withdraw on the day of trial, alleging a breakdown of the attorney-client relationship and alleging that he could not place his client on the stand because he would be putting on perjured testimony. The superior court denied the motion to withdraw and ordered the attorney to put Coleman on the stand, question him, and argue his case to the jury. Although the supreme court did not necessarily approve of the fact that counsel revealed the perjury to the court or of the fact that the trial court ordered full representation, the court concluded that Coleman was not harmed by the procedure employed and therefore affirmed Coleman's conviction. The supreme court upheld the trial court's decision that Coleman's attorney had not acted improperly and upheld the trial court's conclusion that appointing another public defender would not have solved Coleman's problems with his attorney which the court concluded were based upon a distrust of public defenders and the judicial system in general. In Newcomb's case we believe that the record supports the inference that Newcomb's problem with his attorney may very well have been a problem with a particular attorney, Davis, and may not have arisen with another attorney. The supreme court also stressed that the trial judge ordered Coleman's attorney to give him full representation and pointed out that Coleman thus had a very favorable situation in having an attorney who would be fully aware of the facts of the case and yet would be able to give his client full representation. The court believed that the record indicated that Coleman received full and competent representation. In Newcomb's case the record indicates that the conflict in the attorney-client relationship permeated the trial. It is true that Coleman did not testify in his case. However, Coleman did not testify after the court urged him to take the stand; his attorney would have been able to question him and argue his position. Newcomb did not take the stand, but it was clear his attorney was not going to question him or argue his position. Newcomb specifically stated that he did not want to take the stand unless he had an attorney he trusted. Although the supreme court did not necessarily approve of all the procedures used in Coleman's case, it concluded that the alternatives which the trial court took re-

SINGLETON, Judge, dissenting.

Whether to grant a continuance is a question committed to the discretion of the trial court. *Neilson v. State*, 623 P.2d 304, 307 (Alaska 1981). We should not overturn such a decision unless we can honestly say that there was an abuse of discretion. Such an abuse can only be found if the court gave no appropriate reasons at all for the decision, or the reasons given were clearly untenable. Here the trial court denied the motion to withdraw and the accompanying motion for continuance because it feared that granting them would facilitate perjury. There is substantial evidence in the record that Newcomb did contemplate perjury and that his disagreement with his attorney, which prompted the motion to withdraw, was solely over this contemplated perjury.[1] The overwhelming majority of cases that have addressed this issue find judicial concern about contemplated perjury an appropriate reason for denying withdrawal under similar circumstances. *Thornton v. United States*, 357 A.2d 429 (D.C.App.1976); *People v. Schultheis*, 638 P.2d 8 (Colo.1981); *State v. Henderson*, 205 Kan. 231, 468 P.2d 136, 138 (1970); *People v. Salquerro*, 107 Misc.2d 155, 433 N.Y.S.2d 711 (N.Y.Sup.1980); *Maddox v. State*, 613 S.W.2d 275 (Tex.Cr.App.1981) (opinion on rehearing); Erickson, *The Perjurious Defendant: A Proposed Solution to the Defense Lawyer's Conflicting Ethical Obligations to the Court and to His Client*, 59 Den.L.J. 75 (1981).

I do not see how it can be an abuse of discretion to base a decision on reasons accepted by most of the courts that have considered the issue under discussion.

Since Judge Hanson's reasoning in denying the withdrawal was to prevent perjury, it necessarily follows that the state's acquiescence in the request for withdrawal is irrelevant. The issue is not whether the state would lose witnesses or be handicapped in presenting its case if trial were delayed, but whether a delay would enable Newcomb to either find an unethical attorney indifferent to perjury or, having been warned by his difficulties with Davis, fool an ethical attorney. The record is clear that Judge Hanson understood the prosecutor's suggestion that another attorney might not have the same problem with Newcomb to be based on the prosecutor's assumption that one of these two alternatives would transpire. In either case, as Judge Hanson found, the administration of justice would suffer. *People v. Schultheis*, 638 P.2d at 14–15.

In this regard, I suggest that the only fair interpretation of the colloquy between Judge Hanson and the prosecutor regarding the state's position on Davis' motion to withdraw was that the state felt it had such a good case against Newcomb that it was indifferent to any contemplated perjury. A responsible judge can never be indifferent to perjury no matter how often he sees it or how cynical others may become.

Judge Hanson's decision maintains the integrity of the judicial system without sacrificing Newcomb's right to obtain relief if he can show that he was denied the effective assistance of counsel, *i.e.* that Davis misunderstood him and failed to adequately put on a defense. *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3d Cir. 1977); Alaska Rule of Criminal Procedure 35(c)(1). *See Risher v. State*, 523 P.2d 421, 425 n.20 (Alaska 1974). I would affirm the decision of the trial court.

---

sulted in a trial which was clearly fair to Coleman. We simply do not believe the record allows us to reach a similar conclusion in Newcomb's case.

1. I believe the requirements of *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970) were met. Davis clearly communicated to Judge Hanson his belief that the sole controversy between Newcomb and him involved Newcomb's desire to perjure himself. To go further and require the trial court to hold a pretrial adversary hearing to determine if Newcomb in fact intended perjury would destroy the attorney-client privilege and necessitate a preview of the defense in violation of *Scott v. State*, 519 P.2d 774, 783–85 (Alaska 1974). For this reason an extended inquiry has not been required by the courts considering the issue. *See, e.g., People v. Schultheis*, 638 P.2d 8, 12–13 (Colo.1981).