**Donald HUITT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7141.**

Court of Appeals of Alaska.

March 2, 1984.

**417**

Roger W. Carlson, Ketchikan, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Donald Huitt was convicted, following a jury trial, of attempted murder in the second degree, AS 11.41.110 and AS 11.31.100, assault in the fourth degree, AS 11.41.230, and burglary in the first degree, AS 11.46.-300(a)(2). Superior Court Judge Thomas E. Schulz sentenced Huitt to fifteen years for attempted murder in the second degree, nine months consecutive to the attempted murder charge for assault in the fourth degree, and six years concurrent to the attempted murder charge for burglary in the first degree. Huitt appeals his convictions and sentences to this court. We reverse his conviction for attempted murder in the second degree but affirm his convictions and sentences for assault in the fourth degree and burglary in the first degree.

On the evening of September 19, 1981, Donald Huitt set out by canoe for the cabin shared by Guy Modig, Patricia Fay, and Fay's eleven-year-old son, Patrick. Their cabin was located on Gravina Island near Ketchikan. Huitt and his wife had just moved to the island and were living in a nearby cabin.

At approximately 9:30 p.m., Modig and Fay heard a boat dock on their beach. Patricia Fay took a flashlight and went outside to see who it was. She saw Huitt getting out of his canoe. When he was three or four feet away she noticed that he was carrying an axe. Fay testified that she told him he couldn't go in the house with the axe. He pushed her aside and entered the cabin. Huitt was upset because he believed Patricia Fay had stolen some marijuana from him. An argument ensued.

Modig testified that Huitt said he'd "come over to dust us both." At one point, Huitt hit Modig in the head with the axe handle. Huitt also struck Modig a second time, but according to Modig he managed to stop the swing with his hand. In doing so, Modig said he dislocated two fingers. Huitt also swung the axe at Fay. The sharp edge of the axe grazed the back of the robe she was wearing. Modig tackled Huitt around the waist and threw him to the floor. They struggled over the axe. Huitt tricked Modig into releasing his grip on the axe, then took the axe and went over to where Fay was sitting. He accused her of stealing his marijuana, then struck her in the head with the axe. The axe smashed Fay's arm which she had put up over her head to protect herself. The blow to Fay's head resulted in a horseshoe-shaped cut approximately three quarters of an inch long. Fay started to cry and ran to the sink to try to stop the bleeding. Huitt stood watching. He threatened to "smack her in the back of the head" if she didn't shut up. Huitt's mood then appeared to change. He invited Fay and Modig to "go over to Oscar's and get high." They refused. Huitt started for the door. Both Fay and Modig testified that Huitt then threat-

ened to kill them if they went to the police. Although still afraid of him, Modig got a lantern and accompanied Huitt to his canoe. Huitt then left in the canoe.

Huitt was charged in three counts with attempted murder in the first degree, for his assault on Patricia Fay; assault in the second degree, for his assault on Guy Modig; and burglary in the first degree.

As to Count I, Judge Schulz instructed the jury on attempted murder in the first degree and the lesser-included offenses of attempted murder in the second degree, assault in the third degree, assault in the fourth degree, and reckless endangerment. As to Count II, Judge Schulz instructed the jury on assault in the second degree and the lesser-included offenses of assault in the third degree, assault in the fourth degree and reckless endangerment. As to Count III, Judge Schulz instructed the jury on burglary in the first degree as well as the lesser-included offense of criminal trespass.

The jury found Huitt not guilty of attempted murder in the first degree but guilty of the lesser offense of attempted murder in the second degree, not guilty of assault in the second degree but guilty of the lesser offense of assault in the fourth degree, and guilty of burglary in the first degree.

1. Huitt conceded at oral argument that, although he objected to the court's instruction on attempted second-degree murder, he did not object to the instruction on the ground that there was no offense of attempted second-degree murder. He concedes we must reach this issue as plain error. We conclude that if there is no offense of attempted second-degree murder under the revised code, this is the kind of situation where we should decide the issue despite Huitt's inadequate objection at trial.

2. AS 11.41.110 provides:
 *Murder in the second degree.* (a) A person commits the crime of murder in the second degree if
 (1) with intent to cause serious physical injury to another person or knowing that his conduct is substantially certain to cause death or serious physical injury to another person, he causes the death of any person;

■ Huitt contends on appeal that his conviction for attempted second-degree murder must be set aside because there is no such offense under the revised code.[1] He argues that the crime of attempted second-degree murder is logically impossible because AS 11.41.110 does not require intent to kill as a prerequisite to guilt.[2] After examining the revised code, we agree with Huitt and reverse his conviction for attempted second-degree murder.

Alaska's law of criminal attempt is codified at AS 11.31.100. Former AS 11.31.100, in effect at the time this offense was committed, provided in pertinent part:
 *Attempt.* (a) A person is guilty of an attempt to commit a crime if, with intent to commit a crime, he engages in conduct which constitutes a substantial step toward the commission of *that* crime. [Emphasis added.]

Judge Schulz's instructions to the jury were consistent with this statute. The question raised in this case is whether a person can attempt to commit the crime of second-degree murder.

■ The attempt statute requires a defendant to act intentionally. Intentionally is defined in former AS 11.81.900(a)(1):
 *Definitions.* (a) For purposes of this title, unless the context requires otherwise,
 (1) a person acts "intentionally" with respect to a result described by a provi-

 (2) he intentionally performs an act that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life; or
 (3) acting either alone or with one or more persons, he commits or attempts to commit arson in the first degree, kidnapping, sexual assault in the first degree under § 410(a) or (2) of this chapter, sexual assault in the second degree, burglary in the first degree, escape in the first or second degree, or robbery in any degree and, in the course of or in furtherance of that crime, or in immediate flight from that crime, any person causes the death of a person other than one of the participants.
 (b) Murder in the second degree is an unclassified felony and is punishable as provided in AS 12.55.

sion of law defining an offense when his *conscious objective is to cause that result;* [Emphasis added.]

In the Commentary to AS 11.81.900(a)(1), the legislature indicated:

> When a statute in the Code provides that a defendant must intentionally cause a result, *the state must prove that it was the defendant's conscious objective to cause that result.* This culpable mental state is comparable to the existing form of culpability commonly referred to as "specific intent." Bribery, for example, requires that the defendant confer a benefit upon a public servant with intent to influence him; *the state must prove that it was the conscious objective of the defendant to cause the public servant to be influenced.*

Commentary on the Alaska Revised Criminal Code, Senate J. Supp. No. 47, at 140–41, 1978 Senate J. (emphasis added). When we read the strict definition of intentionally into the attempt statute, we conclude that for the state to prove the crime of attempted murder it must show that the defendant intended to commit the crime of murder in the sense that the defendant must intend to kill. He must intend to commit *that* crime —murder.

 When we apply that analysis to the instructions which were given in this case, we believe that it is clear that Huitt's conviction for attempted second-degree

murder was not proper. Judge Schulz charged the jury that:

> Murder in the Second Degree is defined, in pertinent part, in AS 11.41.-110(a)(1) as follows:
>
> (a) A person commits the crime of Murder in the Second Degree if (1) ... knowing that his conduct is substantially certain to cause death or serious physical injury to another person, he causes the death of any person.

Under those instructions the jurors could convict Huitt of attempted second-degree murder if they merely found that Huitt performed certain acts knowing that his conduct was substantially certain to cause serious physical injury to another person. This flaw in the instructions alone would require a reversal of Huitt's conviction. *See People v. Harris,* 72 Ill.2d 16, 17 Ill. Dec. 838, 841–843, 377 N.E.2d 28, 31–33 (1978). In our view the only substantial question is whether a person can be convicted of attempted second-degree murder if he acted "knowing that his conduct was substantially certain to cause death."[3] However, given our interpretation of the revised code that to be convicted of attempted murder a person must intend to kill, we conclude that Huitt cannot be convicted of attempted second-degree murder even under this section of the second-degree murder statute.[4] A defendant who

---

**3.** At common law intent-to-kill murders included those situations where the defendant either subjectively intended death, or performed an act or acts which he knew were substantially certain to result in death. W. LaFave & A. Scott, *Criminal Law,* § 68 at 535 (1972). But as La-Fave points out:

> [T]he modern view is to limit "intent" to instances where it is the actor's purpose to cause the harmful result, and the word "knowledge" is used to cover instances where *the actor knows that the harmful result is substantially certain to occur.* In a criminal code utilizing such definitions, what is here called intent-to-kill murder may be described as intentionally or knowingly killing another.

*Id.* at 535 n. 3. The "modern view" has been adopted in Alaska. *See* AS 11.81.900(a)(1) defining intent and AS 11.81.900(a)(2) defining knowledge.

**4.** We note that the language of former AS 11.31.-100 may be indicative of the legislature's original intent to apply criminal attempt to second-degree murder.

Former AS 11.31.100(d)(1) provides:

> (d) An attempt is a
> (1) class A felony if the crime attempted is *murder in any degree* or kidnapping. [Emphasis added.]

This would in fact have been compatible with the definition of "intentionally" proposed in the Tentative Draft to the Revised Code which reads in pertinent part:

> *Definitions.* (a) For purposes of this title, unless the context otherwise requires,
> (1) a person acts "intentionally" with respect to a *result or to conduct* described by a provision of law defining an offense when his conscious objective is to cause that result or to engage in the conduct;

Alaska Criminal Code Revision Part II, at 5 (Tent. Draft 1977) (Commentary to AS 11.11.-

acts knowing that his conduct is substantially certain to cause death does not necessarily intend to kill given the definition in the revised code.

■ Knowingly is defined in former AS 11.81.900(a)(2):

*Definitions.* (a) For purposes of this title unless the context otherwise requires,

(2) a person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when he is aware that his conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless he actually believes it does not exist....

This mental state of "knowingly" is clearly intended as a lesser mental state than intentionally. Since Huitt could have acted knowing that his conduct was substantially certain to cause death without having an intent to kill, we conclude that he could not properly be convicted of attempted second-degree murder. Accordingly, we reverse Huitt's conviction for attempted second-degree murder because we conclude that the revised code does not provide for such an offense.

Huitt raises other issues which we must decide because they are relevant to his convictions for assault and burglary. Huitt argues that Judge Schulz erred in not allowing his public defender to withdraw from his case.

■ Following Huitt's motion to allow his attorney to withdraw, Judge Schulz held an *ex parte* hearing for Huitt to explain to Judge Schulz why he wanted another counsel. The hearing was *ex-parte* so that Huitt could explain his grievances to Judge Schulz without the prosecutor present. Huitt was concerned that he might otherwise prejudice his case by revealing his trial strategy to the prosecutor. Huitt explained his grievance, and it appears to us that the discussion resolved the substance of Huitt's concerns.[5]

Judge Schulz concluded, on the basis of what was presented, that he would not allow the Public Defender Agency to withdraw from the case. He stated he would permit another public defender to represent Huitt so long as the trial took place as scheduled. Judge Schulz said he would not grant a continuance because the motion practice was completed, and the case was

---

140) (emphasis added). "The Revised Code, however, limits the scope of the term 'intentionally' to govern only results." *Neitzel v. State,* 655 P.2d 325, 330 (Alaska App.1982). By redefining "intentionally" as it did, the legislature now precludes the application of attempt to second-degree murder.

5. There was a misunderstanding as to whether evidence would be presented relating to drug and alcohol use by Patricia Fay and Guy Modig, the victims of the crimes. Huitt's attorney understood Huitt to be asking him to present the evidence to prove that Fay and Modig were drug users and/or alcoholics. The attorney said that while he was willing to present evidence on the question of whether they were under the influence at the time of the alleged event, he was unwilling to engage in character attacks which were not relevant to the issue of capacity. Huitt told the court that all he wanted was to introduce evidence to show that "when this occurred, everyone was drunk.... They [Fay and Modig] were smoking and I think that's really relevant." The court indicated that the evidence would be

allowed in for that purpose and that the attorney had agreed to introduce it.

Huitt's dissatisfaction was also based on his belief that his attorney was not actively pursuing his interests because his attorney failed to secure his release on bail following his arrest on March 9, 1982 for failure to appear at his trial. The trial court, in response to this point indicated that under the circumstances "no attorney in the world" would have been able to get Huitt's bail reduced prior to trial and that it was "unrealistic" for Huitt to blame his detention on his attorney.

Huitt was also upset because his attorney had not met with Huitt's wife to discuss information she had which pertained to the case. Huitt's wife had tried unsuccessfully on several occasions to talk to his attorney. He was either not in his office or on his way to court. She did, however, give him papers which related to Huitt's bail hearing. The record does not show what if any other information Mrs. Huitt had. The attorney indicated that he never said he was unwilling to talk to her.

set for trial in two weeks. Judge Schulz apparently considered the fact that the case had been pending for several months and had originally been set for trial on January 26, 1982. The trial had been continued until March 2, 1982, when Huitt failed to appear for trial. The trial was rescheduled for March 30, 1982, and Huitt's motion to have his counsel withdraw was argued on March 16, 1982. We conclude that Judge Schulz did not abuse his discretion in refusing to grant the motion under these circumstances.[6] It does not appear from the record that Huitt's conflict with the public defender representing him was irreconcilable, and there were reasons to have Huitt's case tried promptly and on the trial date which had already been set.[7]

Huitt also raises some issues which concern his sentence. His arguments concern the fact that Judge Schulz used two prior felony convictions to enhance Huitt's sentence under AS 12.55.125. Since we have already set aside Huitt's conviction for attempted second-degree murder and since Huitt's conviction for assault in the fourth degree is a misdemeanor, Huitt's arguments affect only his burglary sentence.

The procedure for giving notice of prior convictions is found in AS 12.55.145(b):

When sentence is imposed under this chapter, prior convictions not expressly admitted by the defendant must be proved by authenticated copies of court records served on the defendant or his counsel at least 10 days before the date set for imposition of sentence.

The state originally gave notice of three prior felony convictions. However, it turned out that only one of these prior convictions was a felony. At sentencing the state attempted to show that Huitt had been convicted of an escape charge in Oregon and that this conviction was a felony. The prosecution had not given notice that it would attempt to rely on the escape conviction. Huitt objected to the court's using the escape conviction to enhance his sentence, but his objection went to the question of whether the escape was a misdemeanor or a felony. Judge Schulz telephoned an Oregon judge to find out whether Huitt's escape conviction was a felony and he was told that the conviction was a felony. Judge Schulz accordingly sentenced Huitt to six years on the burglary charge, the presumptive sentence for a class B felony for an offender who has two prior felony convictions. AS 12.55.-125(d)(2).

■ On appeal Huitt contends that he was not given proper notice that the state would rely on the Oregon escape conviction and that Judge Schulz improperly relied on the telephone call to the judge in Oregon to establish that the escape offense was a felony. We disagree.

---

6. In *Nielsen v. State*, 623 P.2d 304, 307 (Alaska 1981), the court held that the decision to grant a continuance was within the discretion of the trial court and that where there was an abuse of discretion, the trial court would be reversed only if the defendant was prejudiced.

7. Huitt also argues that his attorney did not represent him competently. Huitt apparently raised this issue to show that he was prejudiced by the trial court's denial of his motion to allow his attorney to withdraw. *Nielsen v. State*, 623 P.2d 304, 307 (Alaska 1981); *Newcomb v. State*, 651 P.2d 1176, 1181 (Alaska App.1982). Since we have concluded that the trial judge did not abuse his discretion in denying the motion, it is unnecessary for us to reach the issue of whether Huitt was harmed by the fact that the trial judge denied the motion. However, we have reviewed the record and conclude that the record does not establish that Huitt was represented incom-

petently. Nothing in the record indicates that Huitt's attorney failed to interview or subpoena witnesses who would have been important to Huitt's defense or that the attorney was unprepared for trial. It also does not appear that Huitt was prejudiced if we assume that his attorney failed to object to the amendment of the burglary charge. Under the instructions given by the court, the state had to prove both that Huitt entered or remained unlawfully in a dwelling and that he intended to commit the crimes of murder or assault while entering or remaining in the building. AS 11.46.-300(a)(2)(B), (C). The jury found on a special verdict form that Huitt entered or remained unlawfully in the building with the intent to commit both murder *and* assault. It thus appears that the prosecution probably had to prove much more than what was statutorily necessary to convict Huitt of burglary.

Huitt could have objected to the lack of notice at the sentencing hearing based on the state's failure to follow the procedural requirements of AS 12.55.145. He also could have asked for additional time to contest this prior conviction. He did not object or ask for additional time but instead contested this matter at the sentencing hearing. There is no indication that he did not have a full opportunity to contest the issue. On appeal Huitt has not suggested that the Oregon escape conviction is actually not a felony conviction. It appears that he was properly sentenced.[8]

◼ In light of our conclusion it is unnecessary to discuss at length Judge Schulz's phone call to Oregon. According to the Alaska Code of Judicial Conduct, Canon 3(A)(4):

A judge ... may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the persons consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond.

This appears to be exactly what Judge Schulz did. We find no error.

◼ Huitt argues as plain error that AS 12.55.145(d) is unconstitutional. He claims that the statute denies him his right to trial by jury under the Alaska Constitution, article I, section 11 and the Fourteenth Amendment of the U.S. Constitution. AS 12.55.145(d) reads:

*Prior Convictions.*

(d) Matters alleged in a notice of denial shall be heard by the court sitting without a jury. If the defendant introduces substantial evidence that he is not the person named in a prior judgment of conviction, that the judgment is not authentic, that the conviction did not occur within the period specified in (a)(1) of this section, or that a conviction should not be considered a prior felony conviction under (a)(2) of this section, then the burden is on the state to prove the contrary beyond a reasonable doubt. The burden

of proof that two or more convictions should be considered a single conviction under (a)(3) of this section is on the defendant by clear and convincing evidence.

There can be no argument, and in fact none is made, as to legislative intent where "the legislature [has] specifically provided in enacting the presumptive sentencing law that prior conviction issues 'shall be heard by the court sitting without a jury.'" *Morgan v. State*, 661 P.2d 1102, 1103 (Alaska App.1983). The issue raised on appeal is whether the legislature can enact a statutory sentencing scheme where the question of whether a defendant had formerly been convicted of one or more felonies is a matter to be determined by the court. A similar challenge was raised in relation to AS 12.55.125(c)(1) in *Huf v. State*, 675 P.2d 268, 271–272, (Alaska App.1984). The defendant in *Huf* argued that the issue of whether he used or possessed a firearm was properly a matter for the jury to decide. This court noted:

[G]enerally the question of whether the defendant has been unconstitutionally deprived of his right to a jury trial is a matter of substantive due process. In general substantive due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 [90 S.Ct. 1068, 1072], 25 L.Ed.2d 368, 375 (1970). However we believe that in *Patterson v. New York*, 432 U.S. 197, 210–11 [97 S.Ct. 2319, 2327], 53 L.Ed.2d 281, 292–93 (1977), the United States Supreme Court, while holding firm to the proposition that the constitution requires the prosecution to shoulder the traditional burden of proving the guilt of the accused beyond a reasonable doubt, also indicated that state legislatures have considerable authority to define crimes. *See Walker v. State*, 674 P.2d 825, 827–829 (Alaska App., 1983).

The provision challenged here does not create a crime, nor is it an element of the

**8.** *See State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979).

crimes for which Huitt was convicted. Rather it is a matter for sentencing. Sentencing matters have traditionally been a question for the court to decide. *Id.* at 271. *See also, United States v. Glick,* 463 F.2d 491, 494 (2d Cir.1972).

A finding that a defendant has formerly been convicted of one or more felonies under AS 12.55.125 does not subject him to an additional sentence. It imposes a mandatory sentence within the statutory range for sentencing in a given crime. The reasoning in *Huf* is controlling on this point. Huitt's argument must therefore be rejected.

The conviction for attempted second-degree murder is REVERSED. The convictions and sentences for burglary and assault are AFFIRMED.