W. Scott **KIESTER**, Appellant,

v.

**HUMANA HOSPITAL ALASKA, INC.**, a **Delaware Corporation; David M. Dietz, M.D., John Snyder, M.D., David D. Anderson, M.D., Patrick M. Nolan, D.O., Roland E. Gower, M.D., and Peter D. Marbarger, M.D., Appellees.**

No. S–4361.

Supreme Court of Alaska.

Dec. 24, 1992.

---

John J. Eufemio, Law Office of John J. Eufemio, Kodiak, for appellant.

Sanford M. Gibbs, Hagans, Brown, Gibbs & Moran, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

W. Scott Kiester contends that he is entitled to damages resulting from the allegedly wrongful denial of his application for surgical privileges by Humana Hospital Alaska, Inc. (Humana). According to Kiester, Humana failed to follow its bylaws in denying Kiester's application, thereby violating his right to due process of law. The superior court dismissed Kiester's claims on Humana's motion for summary judgment. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 1984 Kiester applied for medical and surgical privileges at Humana.

Humana's Medical Staff Bylaws (bylaws) set forth detailed procedures which an applicant and Humana are to follow in the review of an application for privileges. As part of his application, Kiester acknowledged receipt of the bylaws.

Dr. Roland Gower, Chief of Staff of Humana, interviewed Kiester on January 11, 1985, at the request of the Chairman of the Department of Surgery. In the interview, Dr. Gower questioned Kiester about his past surgical experience. He also asked Kiester a variety of questions regarding "surgical indication and treatment." Dr. Gower's memorandum, which apparently is a fair synopsis of Dr. Gower's questions and Kiester's responses, indicates that the following discussion took place at the end of the interview:

> The applicant inquired of me as to what my opinion was. I told him I thought his fund of knowledge was lacking and that I was very concerned about the fact that he had practiced at many different places over the last 25 years and that these reasons for moving on from his practice would have to be checked out. For these reasons I told him that for the time being I would not recommend to Dr. Lehman that he be given temporary surgical privileges, however, I did say that I would recommend to Dr. Lehman to get a second opinion from another general surgeon.

The memorandum does not indicate in what respects Kiester's responses were inadequate or incorrect, or his "fund of knowledge ... lacking."

In April 1985 Dr. Thomas Harrison recommended that Kiester be granted "temporary medical staff privileges until a formal review [could] be made by the Credentials Committee." This recommendation was approved. Kiester disputes the nature and duration of the privileges granted, contending that Dr. Harrison granted him "associate membership" for a one year period.

On June 18 Dr. Peter D. Marbarger, the "second opinion ... general surgeon," interviewed Kiester. Dr. Marbarger also assisted as Kiester performed surgical proce-

dures at Humana. In a letter to the Credentials Committee dated October 27, Dr. Marbarger stated in part:

We had a rather lengthy discussion and, without trying to sound presumptuous, I believe the interview was rather similar to an oral board exam. We discussed several hypothetical situations as well as many specific patient presentations. I am suspicious of both the depth and breadth of his surgical knowledge. Specifically, I believe he would have failed if this had been an actual oral board exam. He does have moderate technical ability operatively but I question his judgment.

Again, the letter does not indicate in what respects Dr. Kiester's responses were inadequate or incorrect, or the "depth and breadth of his surgical knowledge" suspicious.

In November Humana's Credentials Committee recommended that Kiester's application for surgical privileges be denied. In December the Executive Committee notified Kiester of the denial of privileges.

Kiester appealed the denial and an Ad Hoc Committee convened to review the decision in January 1986.[1] During the lengthy hearing, committee members asked Kiester detailed questions regarding surgical treatment required for various medical problems. The Ad Hoc Committee affirmed the denial of privileges.

Kiester appealed again. Humana's governing body appointed an Appellate Review Committee (ARC), which convened in April. The ARC affirmed the denial of privileges.

In April 1988 Kiester filed a complaint in superior court, alleging that in rejecting his application Humana had violated its bylaws and his rights to due process of law under the Alaska Constitution. Kiester also alleged harm to his reputation as well as conspiracy and violation of anti-trust laws.

Superior Court Judge Karen L. Hunt granted Humana partial summary judgment dismissing all but two of Kiester's claims. Judge Hunt found that issues of material fact remained with regard to Kiester's anti-trust claims. Judge Hunt also found that the ARC had failed to make a determination of whether the Executive Committee's decision to deny privileges was arbitrary and capricious, thereby violating Article VIII, Section 6(f) of the bylaws. A partial remand was ordered.

On remand a second ARC reviewed the record, made specific findings and, citing the letters of Drs. Gower and Marbarger as well as the conclusions of the Ad Hoc Committee, determined that the Executive Committee's denial of Kiester's application was not arbitrary and capricious. The case returned to superior court and on cross motions for summary judgment, Judge Hunt dismissed all of Kiester's claims.

This appeal followed. Kiester contends generally that in denying his application, Humana violated its bylaws and his right to due process of law. Kiester does not ask that Humana be directed to reconsider his application and grant him privileges. Rather, he contends that he is entitled to damages because of Humana's wrongful denial of his application.

## II. STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this court must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment on the law applicable to the established facts. All reasonable inferences of fact from proffered materials must be drawn against the moving party ... and in favor of the non moving party...." *Sea Lion Corp. v. Air Logistics of Alaska*, 787 P.2d 109, 116 (Alaska 1990) (citations omitted).

## III. ALLEGED VIOLATIONS OF HOSPITAL BYLAWS AND KIESTER'S RIGHT TO DUE PROCESS OF LAW

As we consider Kiester's diverse arguments, a common theme appears. Kiester

---

**1.** Article VIII, Section 1(a) of the Medical Staff Bylaws provides in part:

When any practitioner receives notice of a recommendation of the Executive Committee that, if ratified by decision of the governing body, will adversely affect his/her appointment to or status as a member of the medical staff, or his/her exercise of clinical privileges, he/she shall be entitled to a hearing before an *ad hoc* committee of the medical staff.

believes that a physician who submits an application for hospital privileges stands in need of great protection from the courts, because of the better bargaining position of the hospital. Kiester argues that courts must vigorously enforce hospital bylaws and ensure that applications are fairly considered so that applicants are not denied privileges based on arbitrary or discriminatory considerations. Before turning to Kiester's specific concerns, we must address the role of courts in reviewing a hospital's decision to deny an application for hospital privileges.

### A. Judicial review of hospital privileges applications.

■ Courts are in general agreement that the decisions of a hospital governing body regarding applications for hospital privileges are to be accorded great deference, and that judicial review should be limited to factors which are within the expertise of courts. *See, e.g., Laje v. R.E. Thomason Gen. Hosp.*, 564 F.2d 1159, 1162 (5th Cir.1977), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1134 (1978).

We have recognized that it is not within the expertise of courts to determine whether a physician has the medical training and experience to qualify for membership on a hospital staff or to qualify for specific medical or surgical privileges:

Courts have recognized that the evaluation of the medical qualifications of physicians is a factual determination properly committed to the expert judgment of the hospital authorities:

No court should substitute its evaluation of such matters for that of the Hospital Board.... The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance.

*Eidelson v. Archer*, 645 P.2d 171, 177 (Alaska 1982) (omission in original) (quoting *Sosa v. Bd. of Managers of the Val Verde Mem. Hosp.*, 437 F.2d 173, 177 (5th Cir.1971)).

■ However, courts are equipped to determine whether a hospital governing body has followed its bylaws and whether a decision regarding an application for privileges was made in accordance with basic principles of fairness and due process of law.[2] Courts may "require that the procedures employed by the hospital are fair, that the standards set by the hospital are reasonable, and that they have been applied without arbitrariness and capriciousness." *Laje*, 564 F.2d at 1162. This type of limited review does not intrude upon a hospital's recognized expertise regarding evaluation of medical qualifications, yet it affords protection to an applicant against arbitrary denial of privileges in violation of an applicant's rights to substantive and procedural due process of law.

### B. Denial of privileges based on a subjective process.

■ Kiester challenges virtually every step of the process through which Humana evaluated his application for privileges.[3]

---

**2.** Courts have often distinguished between public and private hospitals in articulating the nature of judicial review. *See* Sheree L. McCall, *A Hospital's Liability for Denying, Suspending and Granting Staff Privileges*, 32 Baylor L.Rev. 175, 175–190 (1980). In *Storrs v. Lutheran Hospitals and Homes Society of America, Inc.*, 609 P.2d 24, 28 (Alaska 1980), we held that a privately owned hospital was subject to constitutional due process standards as a "quasi public" hospital because it was the only hospital serving the community and because it was significantly funded by government sources. We need not determine in this case whether Humana is quasi public as Humana does not argue that Kiester is not entitled to due process of law. We note a growing trend which affords judicial review to ensure that no hospital, whether public or pri-

vate, establishes rules governing admission which permit exclusion on an arbitrary or irrational basis, or which are unreasonably susceptible to arbitrary or discriminatory application. *See, e.g., Miller v. Eisenhower Medical Ctr.*, 27 Cal.3d 614, 166 Cal.Rptr. 826, 833, 614 P.2d 258, 265 (1980).

**3.** Kiester also advances several arguments relating to the initial review of his application by Humana's Credentials Committee. We conclude that these arguments lack merit.

Specifically, Kiester argues a) that the hospital did not act upon his application within 60 days as required by Article V, Section 2(a); b) that there was no review of his application by the head of the department of surgery as re-

Kiester contends that he was never given notice of the "charges" against him so he could prepare for the hearing before the Ad Hoc Committee. He also argues that the Ad Hoc Committee did not conduct its hearing according to the bylaws and that the committee instead subjected him to an unprecedented prolonged oral examination. Kiester contends that the bylaws do not provide for oral examinations and that such examinations are unsound because of their subjective nature. He claims that Humana had no criteria regarding questions that would be asked in the examination and also had no criteria regarding the answers. Finally, he claims that he was denied due process of law and was arbitrarily denied privileges because Humana did not consider evidence Kiester assembled which, in his opinion, demonstrated that he correctly answered the questions and passed the examination.

Humana's bylaws provide for a hearing and appellate review of a decision to deny an application for clinical privileges. Medical Staff Bylaws Article VIII. Regarding

notice of the hearing, the bylaws provide as follows:

> The notice of hearing shall state in concise language the acts or omissions with which the practitioner is charged, a list of specific or representative charts being questioned, and/or the other reasons or subject matter considered in making the adverse recommendation or decision.

Medical Staff Bylaws Article VIII, Section 3(b).

On December 27, 1985, Humana's Executive Director sent a letter to Kiester which stated in part:

> As per our bylaws, page 4, section 2a. only physicians and dentists currently licensed to practice in the State of Alaska who can document their background, experience, training and demonstrated competence shall be qualified for membership on the medical staff. I would like to further add that there are no particular charges against you, as per your request of the same.

■ This language gave Kiester notice that the rejection of his application was not

---

quired by Article V, Section 1(f); c) that Humana improperly relied on Dr. Gower's letter in denying privileges and that the letter was ambiguous and without objective foundation; d) that the Credentials Committee did not make a written report as required by Article V, Section 2(a); and e) that the Credentials Committee was not impartial because Dr. Gower was a member.

Article V, Section 2(a) of the bylaws require the Credentials Committee to make a written report to the Executive Committee "[w]ithin sixty (60) days after receipt of the completed application for membership." The parties dispute when Kiester's application was complete. Humana asserts that Kiester delayed submitting required references. Kiester does not respond to the claim that his application was incomplete. Moreover, he does not cite to any part of the record in support of his argument that the committee's report was late.

Because Kiester has not demonstrated from the record that his application was complete, we find no merit in his argument that the report of the Credentials Committee was late. Moreover, even if we were to assume that the report were late, Kiester has made no attempt to show how this delay harmed him.

Article V, Section 1(f) provides that "[t]he completed application ... shall be transmitted to the appropriate department chairperson for review and recommendations prior to submission to the Credentials Committee." Kiester argues that he was denied due process because there is no record that Dr. Lehman, who

chaired the Department of Surgery, reviewed or made recommendations regarding Kiester's application. Humana contends and Kiester admits that Lehman delegated his responsibility to Dr. Gower.

Kiester does not answer Humana's argument that this issue was raised for the first time on appeal. Therefore, we decline to address the argument. *Interior Credit Bureau, Inc. v. Bussing,* 559 P.2d 104, 105 n. 2 (Alaska 1977).

Kiester's argument that the Credentials Committee violated Article V, Section 2(a) of the bylaws is not persuasive. Article V, Section 2(a) requires a written report from the Credentials Committee to the Executive Committee. A brief entry in the minutes of the November 12, 1985, Credentials Committee meeting, records the review and denial of Kiester's application. In making its decision, the committee considered "various interviews" and a "letter from Dr. Marbarger." A memorandum regarding this decision was received by the Executive Committee in a January 22, 1986 meeting. Although this is not a detailed written report, it is not so inadequate as to provide a basis for overturning the hospital's decision.

Humana claims that Kiester's argument alleging bias on the part of the Credentials Committee was raised for the first time on appeal. Kiester does not respond. Therefore, we decline to address the issue. *Id.*

based on charges of misconduct or malpractice.[4] Moreover, the letter put Kiester on notice that he had not satisfied his burden of producing adequate information and resolving doubts about his qualifications for surgical privileges.[5]

However, in a more fundamental sense, Humana did *not* give Kiester notice of the reason his application was denied. There is nothing in that letter, or other prior letters, memoranda or transcripts, which identifies the bases for the implicit conclusion that Kiester's "background, experience, training and demonstrated competence" were lacking. Although the focus of the denial apparently was on Dr. Kiester's "training and education," and presumably also "demonstrated competence," no specific deficiencies in training or education were noted by Humana. Further, despite the admittedly examination-like nature of interviews with individual doctors and the Ad Hoc Committee, Humana did not provide Kiester with notice of how he had failed to carry his burden of demonstrating competence. Yet the record does demonstrate that it was answers to these questions which were unsatisfactory for some unidentified reason or reasons.

■ We recognize that the governing body of a hospital must be given great latitude in establishing standards which an applicant must meet before privileges will be granted. *See Sosa*, 437 F.2d at 176. We also recognize that it may be difficult for a hospital to establish criteria which may be applied objectively in evaluating whether an applicant has met the standards for every conceivable medical or surgical privilege. *See Ritter v. Bd. of Comm'rs of Adams County Public Hosp. Dist. No. 1*, 96 Wash.2d 503, 637 P.2d 940, 947–48 (1981); *Sosa*, 437 F.2d at 176.

■ However, basic principles of due process of law require that criteria established for granting or denying privileges not be vague and ambiguous, and that as established, they be applied objectively. *See Williams v. Kleaveland*, 534 F.Supp. 912, 917 (W.D.Mich.1981) (holding that rules established by hospitals to regulate the conduct of doctors must be capable of objective application); *Miller v. Eisenhower Medical Ctr.*, 27 Cal.3d 614, 166 Cal. Rptr. 826, 833, 614 P.2d 258, 265 (1980) (finding that rules governing the admission of physicians cannot stand if the standard is unreasonably susceptible of arbitrary or discriminatory application); *Martino v. Concord Community Hosp. Dist.*, 233 Cal. App.2d 51, 43 Cal.Rptr. 255, 260 (1965) (stating a hospital must set up standards which are clear, not vague, ambiguous or uncertain); *Wyatt v. Tahoe Forest Hosp.*, 174 Cal.App.2d 709, 345 P.2d 93, 97 (1959) (noting that the standard set up was so vague and uncertain "that admission to the staff can depend on the whim and caprice of the directors").

■ Furthermore, basic principles of due process of law require that when a hospital denies an application for privileges, it notifies the applicant of the specific criteria which were determinative in the denial and how the applicant failed to meet the hospital's expectations with regard to the criteria.

Fundamental fairness dictates that the hospital apprise the physician of the specific charges and that the applicant be afforded the opportunity to appear and present witnesses and material in support of his position and to contradict or explain the bases asserted for the proposed denial. Such hearings in addition to affording the doctor an opportunity to

---

**4.** Throughout his brief, Kiester appears to argue that a hospital may not deny an application for privileges absent evidence of actual error by a doctor which causes harm to a patient. This argument is without merit. In accordance with its public responsibility to provide a high standard of medical care, Humana has not only the power, but also the duty to deny privileges where it is not satisfied that a doctor meets appropriate standards of medical or surgical competence. Medical Staff Bylaws Article III, Section 2(a); Article V, Section 1(f).

**5.** The relevant bylaw provided that the "applicant shall have the burden of producing adequate information for a proper evaluation of his/her competence, character, ethics, and other qualifications, and for resolving any doubts about such qualifications." Medical Staff Bylaws Article V, section 1(e).

respond to charges enable a hospital to make "an intelligent and reasonable judgment in good faith upon all the facts presented."
*Garrow v. Elizabeth General Hosp. & Dispensary,* 79 N.J. 549, 401 A.2d 533, 541 (1979) (citations omitted) (quoting *Sussman v. Overlook Hosp. Ass'n,* 95 N.J.Super. 418, 231 A.2d 389, 393 (App.Div.1967)). Based on our review of the record, we conclude that Humana has not satisfied these basic requirements of due process of law.

Humana based its decision in large part on the adverse letters of Doctors Gower and Marbarger and on the adverse recommendation of the Ad Hoc Committee. These negative evaluations were based in turn on oral evaluations of Kiester's medical competence. These evaluations concluded in general terms that Kiester lacked sufficient medical knowledge to be granted surgical privileges.

While the evaluations articulate *conclusions* that Kiester lacked sufficient knowledge, none of the evaluations establish the level of knowledge which would be of "sufficient adequacy"[6] or the criteria used to evaluate sufficiency. There are references to instances where the evaluator felt Kiester's approach to a specific medical problem was not in accordance with unspecified current medical literature. However, the notice to Kiester does not indicate which questions Kiester answered correctly and which he answered inadequately or incorrectly, nor does it attempt to quantify in any way the extent to which an applicant must answer in a satisfactory manner in order to meet standards of training and education or demonstrated competence. Absent such notice, it is impossible for any reviewing body to objectively and independently determine if an applicant has established "competence."

Further, there is little record of the questions and answers exchanged between Kiester and Dr. Marbarger. In the absence of such a record, it would seem impossible for an appellate panel of medical experts to make an independent evaluation of Kiester's responses to those questions.

It is possible that the evaluators had in mind criteria for measurement of an applicant's qualification which would satisfy the requirements of due process. However, we cannot find an articulation of such criteria in the record. In the absence of specific charges indicating in what respect Kiester's information was not adequate, there is no evidence of criteria for evaluation of medical qualifications. We conclude that Humana did not afford Kiester the consideration required by basic principles of due process of law.

 We do not mean to imply that a hospital may not utilize an oral inquiry into the qualifications of an applicant for medical or surgical privileges. The bylaws provide that by "applying for appointment to the medical staff, each applicant thereby signifies his/her willingness to appear for interviews in regard to his/her application." Medical Staff Bylaws Article V, Section 1(b). Moreover, the bylaws authorize the Ad Hoc Committee to consider "[a]ny relevant matter upon which responsible persons customarily rely in the conduct of serious affairs." Article VIII, Section 5(g). Therefore, we do not say that an oral examination may not be administered. However, if the results of an oral examination provide the basis for a denial of an application·for privileges, the hospital must establish criteria for determining whether an applicant has passed the examination and must establish a process whereby the applicant may challenge the conduct of the examination and the hospital's evaluation of the answers given.

---

**6.** Article III, Section 2(a) of the Medical Staff Bylaws provides in part:
Only physicians and dentists currently licensed to practice in the State of Alaska, who can document their background, experience, training and demonstrated competence, their adherence to the ethics of their profession, their good reputation, character, their mental and emotional stability, and their ability to work harmoniously with others, with sufficient adequacy to assure the medical staff and the governing body that any patient treated by them in the hospital will be given a high quality of medical care, shall be qualified for membership on the medical staff.

■ It follows from our discussion that we must conclude that Kiester was also denied due process of law when Humana's second ARC declined to review Kiester's evidence, which he claimed would show that he correctly answered most of the questions asked by the Ad Hoc Committee. When Kiester attempted to introduce this evidence, the committee chair refused it saying:

> I think the appropriate [matter for consideration] is whether the quiz, the interview, the whole process was correct, not what the questions were and what the answers were. The answers to the questions have to be viewed by the medical staff. I think whether the process was correct is what we should be looking at.

In our view, Humana had an obligation at some point in the process to review Kiester's claim and the evidence he offered to prove that he had correctly answered the questions given during the Ad Hoc Committee's oral examination.[7] Due process requires that a "physician must be provided every reasonable means and opportunity to show that the grounds specified for the denial of the application are either inadequate or baseless, or to refute the charges upon which revocation or denial of [privileges] is based." *Silver v. Queen's Hosp.*, 63 Haw. 430, 629 P.2d 1116, 1124 (1981); *Sosa*, 437 F.2d at 177 ("[P]rocedural due process must be afforded the applicant so that he may explain or show to be untrue those matters which might lead the board to reject his application.").

## IV. ALLEGED REVOCATION OF ASSOCIATE PRIVILEGES

■ Kiester contends that Humana granted him "associate membership" for a one year term. He argues that Humana summarily and arbitrarily revoked his membership privileges in October 1985 in violation of numerous but unspecified provisions in Article VIII of the bylaws.[8]

Kiester's contentions that he was granted a one year associate membership at Humana arise out of an unsigned[9] memorandum to Kiester's file from Dr. Thomas J. Harrison. Dr. Harrison acted as temporary Chairman of the Department of Surgery at Humana during 1985. The memorandum refers to an April 26, 1985 interview with Kiester and notes that Dr. Harrison reviewed Kiester's file, consulted with two Anchorage surgeons and reviewed Dr. Gower's negative opinion of Kiester. Dr. Harrison concluded as follows:

> After due consideration I feel that Dr. Kiester sufficiently answered the questions I had concerning his temporary medical staff privileges. I suggested to Dr. Kiester for his year of Associate Membership that he is under probation in that he must have a Board Certified surgeon assist him on all cases.

Also on April 26, 1985, in a signed and dated memorandum, Dr. Harrison indicated that he found Kiester's application and credentials in order and recommended "that he be granted temporary medical staff privileges until a formal review can be made by the Credentials Committee." Dr. Harrison's second memorandum indicates approval of his recommendation on April 29 by Dr. Gower, President, Medical Staff, and on April 30 by Mary D. Willis, Executive Director. A notice to hospital personal indicated that Kiester's temporary privileges were effective through August 30, 1985.

■ Humana is correct in its argument that Dr. Harrison had no authority by him-

---

7. If the members of the second ARC lacked the expertise to evaluate Kiester's claim, the matter should have been referred to a body which had such expertise.

8. We note that this failure to link specific facts and specific relevant legal authority typifies Kiester's approach in advocating his claims before this court. This type of argument does not assist the appellate review process. Appellate briefs should be crafted to serve their primary purpose "which is to bring together the relevant facts and law in a clear and concise manner so that the court is fully informed." *Dickerson v. Geiermann*, 368 P.2d 217, 218 (Alaska 1962).

9. A notation on the memorandum indicates that Dr. Harrison had not read the finished memorandum which was apparently prepared at his direction.

self to grant privileges.[10] Further, even construing Dr. Harrison's memoranda in the light most favorable to Kiester, they show that Humana granted Kiester "temporary privileges," not "associate membership." While Dr. Harrison's unsigned memorandum contains language regarding both temporary privileges and associate membership, the memorandum cannot be construed as a grant of privileges. Rather, the grant of privileges took place with the signatures of Dr. Gower and Ms. Willis approving Dr. Harrison's recommendation. Medical Staff Bylaws Article III, Section 3(a).

We conclude that Humana granted Kiester only "temporary privileges" which automatically expired after 120 days on August 30, 1985, in accordance with Article VI, Section 2(a) of the bylaws.[11] Therefore, his argument that his "associate membership" was wrongfully terminated in October 1985 is without merit.

## V. KIESTER'S CLAIM FOR DAMAGES

 Kiester contends that he had a "property right" to have his application reviewed and his privileges granted and that because of the defective first appellate review hearing he is entitled to damages under *McMillan v. Anchorage Community Hospital*, 646 P.2d 857 (Alaska 1982).

The facts in *McMillan* are distinguishable from the facts of this case. *McMillan* involved a physician who had received staff privileges. *Id.* McMillan's staff privileges were summarily suspended and he sued claiming breach of contract and a violation of his due process rights. *Id.* We found

that while McMillan's summary suspension was not justified under the bylaws, facts adduced at a later hearing were sufficient to justify a post-hearing suspension. *Id.* at 866–67. We found reinstatement unnecessary but remanded for determination of damages measured "from the date of the summary suspension up to the proper suspension following the second hearing." *Id.* at 867. Kiester's situation is unlike Dr. McMillan's because he never was granted surgical privileges, except for "temporary privileges" which expired automatically.

Kiester has offered no legal authority for the proposition that he had a "property right" to have his application reviewed and his privileges granted. Because of a lack of briefing, we decline to answer the question whether in this context a denial of due process of law, by itself, entitles an applicant to damages.[12]

REVERSED and REMANDED for further proceedings including a remand to Humana's governing body for consideration of Kiester's claim that he correctly answered the questions of the Ad Hoc Committee.

---

**10.** Article III, Section 3(a) of the hospital bylaws provide as follows:

> Initial appointments and reappointments to the medical staff shall be made by the governing body. The governing body shall act on appointments, reappointments or revocation of appointments usually only after there has been a recommendation from the medical staff as provided in these Bylaws....
>
> ....
>
> Appointment to the medical staff shall confer on the appointee only such clinical privileges as have been granted by the governing body, in accordance with these Bylaws.

The bylaws define "governing body" to mean the Board of Trustees of the hospital.

**11.** Article VI, Section 2(a) of the bylaws provide that Humana may "grant temporary admitting and clinical privileges to the applicant for a period of one hundred twenty (120) days; but in exercising such privileges, the applicant shall act under the supervision of the chairperson of the department to which he/she is assigned."

**12.** Our conclusion that Kiester was denied due process of law does not necessarily mean that Humana could not have justifiably denied Kiester's application for privileges.