**Torey John TUTTLE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8077.

Court of Appeals of Alaska.

May 3, 2002.

On Rehearing March 14, 2003.

---

**32.** 471 P.2d 386 (Alaska 1970).

Rex Lamont Butler, Anchorage, for Appellant.

James J. Fayette, Assistant District Attorney, Susan A. Parkes, District Attorney, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Torey John Tuttle was one of a group of men who attacked another man for the purpose of stealing his money. One member of the group fired several shots at the victim, but the victim escaped unharmed. Based on this incident, seven men—including Tuttle—were indicted for first-degree robbery, AS 11.41.500(a)(1). Some of these seven defendants went to trial, but Tuttle ultimately pleaded no contest to this charge.

First-degree robbery is a class A felony.[1] Because Tuttle was a first felony offender, he faced a presumptive term of either 5 years' or 7 years' imprisonment, depending on whether he personally possessed a firearm during the robbery.[2]

The evidence was in conflict on this point. According to a police report filed in this case, the victim of the robbery initially told the police that another defendant, Sean Beatty, was the one who fired the gun at him. However, when Beatty was interviewed (under the authority of a *Glass* warrant[3]), he stated

1. *See* AS 11.41.500(b).

2. *See* AS 12.55.125(c)(1)-(2)(A).

3. *See State v. Glass,* 583 P.2d 872 (Alaska 1978) (generally requiring the police to obtain a warrant before secretly monitoring or taping a conversation).

that Tuttle was the shooter. Another participant in the robbery, Sean Roe, corroborated this version of events. Roe told the police that he initially had the gun, but then Tuttle yanked the weapon away from him, commenting that Roe "didn't have [the] balls" to use it. Finally, another member of the group, Jerry Christopher ("J.C.") Lee, also stated that Tuttle was the shooter—although his basis for knowing this was uncertain, since he apparently left the scene before the robbery began. Tuttle, for his part, told the police that he never possessed the gun.

Superior Court Judge Larry D. Card was the sentencing judge who was asked to resolve this disputed issue of fact. By the time of Tuttle's sentencing hearing, Judge Card was well familiar with the case: he had already presided over the trials of two of Tuttle's co-defendants (including Sean Roe), and he had presided over the sentencings of four of Tuttle's co-defendants.

Judge Card resolved this factual dispute against Tuttle. That is, Judge Card found that Tuttle possessed (and fired) the gun during the robbery, and that Tuttle therefore faced a 7–year presumptive term rather than a 5–year presumptive term. However, when Judge Card made this finding, he expressly relied on the observations he made while presiding over Roe's trial:

> The Court: I sat through the trial of Mr. Roe[, and] I'm satisfied [that] Mr. Tuttle, if [he did not seize] the gun [from Roe], was handed the gun by Mr. Roe....
>
> [When] Mr. Tuttle [was interviewed,] he denied ever having the gun or firing the gun. [But] by the process of elimination—[and] I've heard the trials—I find that [Tuttle] was telling Detective Vandervalk a lie. He was the one who took the gun and fired the gun....
>
> I think that Mr. Tuttle fired at [the victim]. I think [that] Mr. Roe ... was very believable when I listened to him, when I observed him [at his trial]. [He] was very truthful. And I observed his demeanor, and I'm satisfied that Mr.

Tuttle did take the gun from ... Sean Roe [and] did fire the gun....

> I'm satisfied that Mr. Tuttle was the one who took the gun [from Roe] and fired the gun. And [this is proved] by a preponderance [of the evidence], which is the requirement ... in a proceeding such as this.

■ On appeal, Tuttle argues that Judge Card violated his right to due process when he relied on Roe's testimony. Tuttle and his attorney were aware, before sentencing, that Roe had identified Tuttle as the shooter. But Tuttle points out that he never had the opportunity to cross-examine Roe on. this issue and point out the reasons why one might distrust Roe's account of what happened.

The State responds that Tuttle had no right to confront Roe at the sentencing hearing. This is correct. Under *Evans v. State*, 23 P.3d 650, 652 (Alaska App.2001), and *Hamilton v. State*, 771 P.2d 1358, 1362–63 (Alaska App.1989), Judge Card could rely on Roe's out-of-court statements unless Tuttle took the stand and offered a testimonial denial of the State's assertion that he was the shooter. Tuttle did not do this. Thus, Judge Card could properly rely on the *content* of Roe's out-of-court statements.

(We again emphasize that Tuttle does not allege that he was ignorant of Roe's account of the robbery when he prepared for his own sentencing. Tuttle's attorney acknowledged that he had received "all discovery" concerning Roe's statements.)

■ It is possible, however, that Judge Card acted improperly when he resolved the credibility of Roe's version of events by relying on his personal observations of Roe at trial. When a judge hears the separate trials or sentencings of two or more co-defendants, the judge is generally obliged to "set aside any judicially acquired information that [is] not admissible against [a particular] defendant, and decide [each defendant's] case ... solely upon the evidence presented in [that defendant's] case".[4]

---

4. *Boyd v. State*, 321 Md. 69, 581 A.2d 1, 6–7 (1990). *Boyd* holds that a judge's exposure to information from a co-defendant's separate trial does not require the judge's disqualification, *see*

*id.* at 3–6, 9, but it also confirms a judge's duty to decide each defendant's case on its own merits, *see id.* at 3–7.

■ A judge can not rely on personal knowledge of matters outside the judicial record.[5] Although Judge Card was entitled to rely on the *content* of Roe's testimony (because Roe's statements had been disclosed to Tuttle), one might plausibly argue that the judge violated this rule when he expressly resolved the evidentiary dispute at Tuttle's sentencing hearing by relying on Roe's *demeanor* while testifying at a separate trial—for Roe's demeanor was something that Judge Card personally observed but which was not known to Tuttle or his attorney.

Nevertheless, we conclude (for two reasons) that we should not resolve this issue of law.

■ First, Tuttle has failed to adequately brief it. Tuttle's brief focuses purely on his purported right to confront Roe—a right that he did not have—and, moreover, he cites no case law in support of his argument. We conclude that even if Tuttle might validly challenge Judge Card's decision on the ground we have just described, that challenge has been inadequately briefed.[6]

■ Second, we must in any event vacate Judge Card's finding. As can be seen from Judge Card's remarks quoted above, he applied the "preponderance of the evidence" standard of proof when resolving the question of whether Tuttle possessed a firearm during the robbery. This was error. Because the applicable presumptive term hinges on this factual issue, the State must prove Tuttle's possession of the firearm beyond a reasonable doubt. We decided this precise question in *Huf v. State*, 675 P.2d 268, 273–74 (Alaska App.1984).

■ Tuttle raises one final claim on appeal. Relying on our decision in *Malloy v. State*, 1 P.3d 1266 (Alaska App.2000), Tuttle argues that his possession of a firearm during the robbery was not a sentencing factor but was actually an element of the crime, and thus the State was obliged to prove this fact to a jury rather than proving it to Judge Card.

But Tuttle's argument is rebutted by the *Malloy* opinion itself. In *Malloy*, we followed the Alaska Supreme Court's decision in *Donlun v. State*[7] and held that any factor which increases the maximum punishment for an offense is an element of the offense that must be proved to a jury.[8] At the same time, we carefully explained that this rule did *not* apply to the factors that trigger the various presumptive terms specified in AS 12.55.125.[9]

To summarize our holding:

First, Tuttle's possession of a firearm is not an element of the offense to be proved to the finder of fact at trial, but rather a sentencing factor to be proved to the court at sentencing.

Second, because Tuttle did not offer a testimonial denial of the State's assertion that he possessed a firearm during the robbery, Judge Card was entitled to rely on out-of-court statements made by Tuttle's co-defendants (and other witnesses) concerning this issue—although it is possible that he was not entitled to rely on his personal observations of Sean Roe's demeanor.

---

5. *See Ex parte Rains*, 555 S.W.2d 478, 480–81 (Tex.Crim.App.1977); *State v. Jamison*, 20 Ohio App.2d 196, 253 N.E.2d 316, 318 (1969); *State v. Denoon*, 8 Ohio App.2d 70, 220 N.E.2d 730, 730–31 (1966).

6. *See Legge v. Greig*, 880 P.2d 606, 609 (Alaska 1994):

> Appellate briefs should be crafted to serve their primary purpose[,] which is to bring together the relevant facts and law in a clear and concise manner so that the court is fully informed. *Kiester v. Humana Hosp. of Alaska, Inc.*, 843 P.2d 1219, 1227 n. 8 (Alaska 1992) (quoting *Dickerson v. Geiermann*, 368 P.2d 217, 218 (Alaska 1962)). An issue given only cursory treatment in a brief will be treated as abandoned. *Petersen v. Mutual Life Ins. Co.*, 803 P.2d 406, 410 (Alaska 1990). [The appellant's] cursory briefing of a significant and potentially difficult ... issue leaves this court virtually no informed basis for meaningful appellate review.

7. 527 P.2d 472 (Alaska 1974).

8. *See Malloy*, 1 P.3d at 1282–84, 1288–89; *Donlun*, 527 P.2d at 474.

9. *See Malloy*, 1 P.3d at 1282–83, citing and discussing *Huf v. State*, 675 P.2d 268, 271–73 (Alaska App.1984).

Third, we vacate Judge Card's finding that Tuttle possessed a firearm during the robbery because Judge Card applied the wrong standard of proof. The State was obliged to prove this fact beyond a reasonable doubt.

We VACATE Tuttle's sentence, and we remand this case to the superior court. Judge Card should re-determine the question of whether Tuttle possessed a firearm during the robbery. If the judge again concludes that the State has proved the applicability of the 7–year presumptive term, he may reimpose the same sentence. However, if Judge Card concludes that the State has not proved Tuttle's possession of a firearm beyond a reasonable doubt, he should re-sentence Tuttle using a 5–year presumptive term as the starting point.

We do not retain jurisdiction of this case.

### OPINION ON REHEARING

The State asks us to reconsider a portion of our decision in this case: our conclusion that the sentencing judge applied the wrong standard of proof when he found that Tuttle carried a firearm during the robbery—a finding that subjected Tuttle to a 7–year presumptive term rather than a 5–year presumptive term under AS 12.55.125(c).

As described in our prior decision (*Tuttle v. State,* 65 P.3d 884 (2002)), Tuttle's sentencing judge declared that he was applying the "preponderance of the evidence" standard of proof when he found that Tuttle carried a firearm during the robbery. But we had previously ruled in *Huf v. State,* 675 P.2d 268 (Alaska App.1984), that the applicable standard of proof was "beyond a reasonable doubt".

*Huf* addressed a legal issue that was not expressly answered in our sentencing statutes: What burden of proof applies when the State alleges that the defendant faces a presumptive term, or a more severe presumptive term, based on the circumstances of the offense rather than the number of the defendant's prior felony convictions?

In most instances, the applicable presumptive term for any given felony is determined solely by the number of the defendant's prior felony convictions. The legislature has declared that "prior convictions not expressly admitted by the defendant must be proved by authenticated copies of court records". *See* AS 12.55.145(b). And if, after the State produces these court records, the defendant still disputes a prior felony conviction (by asserting, for example, that he is not the person named in the court records), the State must prove the prior conviction beyond a reasonable doubt. *See* AS 12.55.145(d).

But though the legislature specified "beyond a reasonable doubt" as the standard for proving a defendant's prior felony convictions, the legislature did not expressly specify the burden of proof that sentencing courts should apply when the determination of the presumptive term rests on other factual issues—such as the defendant's possession of a firearm during the offense. In *Huf,* we reasoned that the legislature must have intended to have sentencing courts apply the same standard of proof—"beyond a reasonable doubt"—in these situations, too. *Huf,* 675 P.2d at 273–74.

The State, in its petition for rehearing, points out that *Huf* appears to have been superseded by AS 12.55.025(i), a statute that was enacted in 1992. This statute reads:

Except as provided by AS 12.55.125(a)(3)

[specifying an increased sentence for first-degree murder if the State proves by "clear and convincing evidence" that the defendant subjected the victim to substantial physical torture],

12.55.125(k)

[authorizing a court to sentence a first felony offender to a term of imprisonment exceeding the presumptive term for second felony offenders if the State proves aggravating factors or extraordinary circumstances by "clear and convincing evidence"],

12.55.145(d)

[specifying "beyond a reasonable doubt" as the standard of proof that the State must meet when a defendant contests a prior felony conviction],

12.55.155(f)

[specifying that aggravating and mitigating factors must be proved by "clear and convincing evidence"],

and 12.55.165

[specifying that the grounds for referring a defendant's case to the statewide three-judge sentencing panel must be proved by "clear and convincing evidence"],

the preponderance of the evidence standard of proof applies to sentencing proceedings.

The State notes that, in Tuttle's case, the sentencing judge was required to resolve a factual issue under AS 12.55.125(c). Specifically, the judge had to determine whether Tuttle's presumptive term was governed by subsection 125(c)(1) (stating that 5 years is the normal presumptive term for a first felony offender convicted of a class A felony) or, instead, by subsection 125(c)(2)(A) (stating that when a first felony offender is convicted of a class A felony other than manslaughter, and the defendant possessed a firearm during the offense, the presumptive term is 7 years).

AS 12.55.125(c) is not one of the statutes listed in AS 12.55.025(i) as being an exception to the normal rule that sentencing issues are governed by the "preponderance of the evidence" standard of proof. Accordingly, the State contends that our decision in *Huf* has been superseded by this statute, and thus Tuttle's sentencing judge was correct when he decided the firearm possession issue by a preponderance of the evidence.

■■■ If Alaska followed the "plain meaning" rule of statutory interpretation, the State would have an open-and-shut case. AS 12.55.025(i) purports to list all of the exceptions to the "preponderance of the evidence" standard of proof, and AS 12.55.125(c) is not among those exceptions. But Alaska does not follow the "plain meaning" rule. Thus, even when a statute is "absolute and unambiguous" on its face,

the plain language of [the statute] does not itself end the inquiry. Under Alaska's sliding-scale approach to statutory construction, strong legislative history may support a different meaning [—although

when a] statute's meaning appears clear and unambiguous, the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent.

*Wold v. Progressive Preferred Insurance Co.*, 52 P.3d 155, 161 (Alaska 2002) (footnotes and internal quotations omitted).

■■■ For the reasons explained here, we conclude that the legislative history of AS 12.55.025(i) demonstrates that the legislature did not intend to overrule our decision in *Huf*—that, in fact, when the legislature enacted AS 12.55.025(i), the legislature intended to codify Alaska's then-current law (both statutes and court decisions) defining the various burdens of proof at sentencing.

AS 12.55.025(i) was introduced as 1992 House Bill 396. There is no mention of *Huf* in the legislative discussions of this bill. Instead, the minutes of these legislative discussions reveal that House Bill 396 was written by the Department of Law for the purpose of having the legislature overturn a sentencing decision that this Court had issued the year before: *Buoy v. State*, 818 P.2d 1165 (Alaska App.1991).

Our decision in *Buoy* was a follow-up to our decisions in *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), and *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983). In *Austin* and *Brezenoff*, we held that a first felony offender should receive a more favorable sentence than the presumptive term mandated for second felony offenders convicted of the same offense, unless the State proved aggravating factors under AS 12.55.155(c) or extraordinary circumstances under AS 12.55.165.

In *Buoy*, we were required to decide what standard of proof should apply when the State sought a higher sentence for a first felony offender by alleging aggravators or extraordinary circumstances. As was true in *Huf*, there was no statute governing this issue, but there were statutes that governed related issues.

In AS 12.55.155(f), the legislature had declared that the "clear and convincing evidence" standard governed the proof of aggravators and mitigators when a defendant is

subject to presumptive sentencing. Similarly, in AS 12.55.165, the legislature had declared that the "clear and convincing evidence" standard governed the proof of non-statutory aggravators and mitigators, as well as extraordinary circumstances, for the purpose of determining whether a defendant's case should be sent to the statewide three-judge sentencing panel. Using these two statutes as guides, this Court concluded that this same burden of proof—clear and convincing evidence—should apply when the State wished to prove aggravating factors and/or extraordinary circumstances at the sentencing hearing of a first felony offender for the purpose of seeking a sentence above the normal *Austin* limit. *Buoy*, 818 P.2d at 1167–68.

The Department of Law was dissatisfied with *Buoy*, so they drafted House Bill 396 to overturn it. In its original form, House Bill 396 read:

> Except as provided in AS 12.55.145(d) [*i.e.*, proof of a defendant's prior felony convictions, which is governed by the "beyond a reasonable doubt" standard], 12.55.155(f) [*i.e.*, proof of aggravators and mitigators in cases governed by presumptive sentencing, where the "clear and convincing evidence" standard applies], and 12.55.165 [*i.e.*, proof of non-statutory factors or extraordinary circumstances which, again, is governed by the "clear and convincing evidence" standard], the preponderance of the evidence standard of proof applies to sentencing proceedings.

During the House Judiciary Committee's hearings on this bill, the Committee was repeatedly told that the effect of this language was to overturn *Buoy* but that, in all other respects, the bill would codify and restate Alaska's existing law regarding the burdens of proof at sentencing.

During a hearing on January 15, 1992, Staff Counsel Laurie Otto told the Committee that the proposed bill "would codify a whole body of [existing] case law" and that "the *Buoy* case was the only one which would be reversed by [the proposed AS 12.55.025(i) ]".[1] At a subsequent hearing on January 17, Ms. Otto referred to a written analysis of the bill which had been distributed to the Committee members. This memorandum apparently contained a discussion of the benefits of the "preponderance of the evidence" standard of proof. Ms. Otto again assured the Committee that the proposed bill would merely codify Alaska's existing law, with the exception of overruling *Buoy*.[2]

At this same hearing of January 17, 1992, Deputy Commissioner of Public Safety Gayle Horetski echoed Ms. Otto's comments: she told the Committee that the proposed bill would return Alaska's sentencing law to what it had been before *Buoy* was decided.[3] One week later, at a hearing on January 24, 1992, Assistant Attorney General Margo Knuth (representing the Department of Law) also announced support for the proposed bill. She, too, indicated that the effect of the new law would be to return Alaska sentencing law to its pre-*Buoy* status.[4]

Surprisingly, despite all of this support for overruling *Buoy*, the legislature decided not to overrule *Buoy*. Instead, they did the opposite: they enacted a new statute to codify the *Buoy* decision. That statute—originally enacted as AS 12.55.125(k), and now re-numbered as AS 12.55.125(k)(2)—reads:

> [Except as provided in subdivision (1) of this statute], [a] first felony offender convicted of an offense for which a presumptive term of imprisonment is not specified … may not be sentenced to a term of unsuspended imprisonment that exceeds the presumptive term for a second felony offender convicted of the same crime unless the court finds by clear and convincing evidence that an aggravating factor under AS 12.55.155(c) is present, or that circumstances exist that would warrant a referral

---

1. *See* Minutes of the House Judiciary Committee, January 15, 1992, Tape 92–1, Side B, Log No. 211.

2. *See* Minutes of the House Judiciary Committee, January 17, 1992, Tape 92–2, Side A, Log No. 578.

3. *See id.*, Tape 92–2, Side A, Log No. 680.

4. *See* Minutes of the House Judiciary Committee, January 24, 1992, Tape 92–3, Side B, Log No. 140.

to the three-judge panel under AS 12.55.165.

Having enacted AS 12.55.125(k) to codify the *Buoy* decision, the legislature approved the Department of Law's proposed AS 12.55.025(i)—but only after adding the new statute, AS 12.55.125(k), to the list of sentencing issues exempted from the preponderance of the evidence standard of proof—that is, sentencing issues governed by a higher standard of proof.

In its petition for rehearing, the State argues that the legislature's inclusion of AS 12.55.125(k) in the list of exemptions is proof that the legislature considered all of the factual issues that might arise at sentencing hearings, and that the legislature carefully chose which issues would be governed by a higher standard of proof. According to the State, the fact that AS 12.55.025(i) contains no exemption for factual issues under AS 12.55.125(c)—*i.e.*, the fact that this statute contains no exemption for issues of fact that will determine the presumptive term for a first felony offender convicted of a class A felony—means that the legislature decided to overrule our decision in *Huf.*

But the State's interpretation is inconsistent with the legislative history. As just explained, the legislature was told that AS 12.55.025(i), as originally proposed, would effect no change in Alaska sentencing law except to overrule *Buoy.* The legislature rejected the Department of Law's overture to overrule *Buoy,* they enacted a statute to codify *Buoy,* and then they amended proposed AS 12.55.025(i) so that it expressly confirmed the *Buoy* decision.

In all of these discussions, no one indicated dissatisfaction with our decision in *Huf.* In fact, no one mentioned *Huf.* The reason no one mentioned *Huf* is plain: the sponsors of AS 12.55.025(i) and the Judiciary Committee's own staff counsel repeatedly assured the Committee that, leaving aside *Buoy,* the proposed statute would ratify Alaska's existing law concerning the burdens of proof at sentencing.

Based on this legislative history, we conclude that even though the wording of AS 12.55.025(i) appears to supersede our decision in *Huf,* this was not the legislature's

intention. Rather, the failure of AS 12.55.025(i) to include a reference to AS 12.55.125(c) appears to be a drafting error on the part of the proponents of the bill—proponents whose express intention was to codify Alaska's existing law on this issue.

For these reasons, we re-affirm our decision that, on the issue of whether Tuttle possessed a firearm during the robbery for purposes of determining his presumptive term under AS 12.55.125(c), the sentencing judge applied the wrong standard of proof. The State was—and is—obliged to prove this fact beyond a reasonable doubt.